TIMOTHY J. SPLAINE *vs*. EASTERN DOG CLUB, INC.

SAME *vs*. GEORGE F. FOLEY DOG SHOW ORGANIZATION, INC.

Suffolk.   February 8, 1939. — June 27, 1940.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Negligence*, Dog show.

A finding, that the defendant, a corporation conducting a dog show, had neglected its duty toward the plaintiff, an exhibitor at the show, to exercise care to keep the premises reasonably safe for his use, as a result of which he was bitten by a dog of another exhibitor, was not warranted by evidence merely that the dog, not shown to have dangerous propensities, sprang and bit the plaintiff from a position on a leash in an aisle where his owner's representative, on the way to exercise the dog after a night in his cage, had stopped for a few minutes to talk with a third person.

TWO ACTIONS OF TORT. Writs in the Superior Court dated July 19, 1932, and February 11, 1933, respectively.

The cases were tried together before *Beaudreau*, J., and a verdict was returned for the plaintiff against each defendant in the sum of $525.

In his brief before this court, the plaintiff stated: "The plaintiff does not rely in any way on the dangerous propensities of the O'Connor dog or the knowledge thereof by the defendants. . . . In the instant case the plaintiff's injury was in its general nature a probable and proximate consequence of the neglect and failure of the defendants to keep the dogs in their stalls except when being exercised downstairs, and by their failure to have attendants present to see that the dogs were not allowed to be present in the aisles."

*J. F. A. Daly,* for the defendants.

*R. E. McCarthy,* (*R. A. Shea* with him,) for the plaintiff.

FIELD, C.J.    These are two actions of tort brought in
the Superior Court, one against the Eastern Dog Club,
Inc., the other against the George F. Foley Dog Show
Organization, Inc.    The plaintiff seeks to recover from
each defendant compensation for personal injuries alleged
to have been sustained by the plaintiff through being bit-
ten by a dog while attending a dog show at the Mechanics
Building in Boston.    In each case the defendant moved for
a directed verdict, the motion was denied and a verdict
was returned for the plaintiff with leave reserved to enter
a verdict for the defendant.    Each defendant moved for
the entry of such a verdict, but the motion was denied
and the defendant excepted.    See *Potter* v. *Dunphy,* 297
Mass. 345.

The plaintiff does not seek, in these actions, to recover
under the statute imposing liability upon the owner or
keeper of a dog to a person injured by it.    G. L. (Ter. Ed.)
c. 140, § 155.    See now St. 1934, c. 320, § 18.    In each case
the plaintiff must recover, if at all, on the ground of negli-
gence of the defendant.    But the evidence did not warrant
a finding of negligence on the part of either defendant.

There was evidence that the show was being conducted
by the defendant the Eastern Dog Club, Inc., and that
the defendant the George F. Foley Dog Show Organiza-
tion, Inc., superintended the show for the other defendant.
There was evidence that the plaintiff had entered a dog
in the show and had paid the entry fee, and that one morn-
ing he brought his dog back to the show, after having taken
it home for the night.    The dogs on exhibition were placed
upon rows of benches or stalls with an aisle six feet wide
between them.    The plaintiff, on the morning in question,
walked down this aisle with his dog, holding him by a
chain or leash, toward the bench or stall allotted to this
dog, and saw one O'Connor standing in the aisle talking
with one Lyons.    O'Connor testified that he was at the
show taking care of and showing two dogs belonging to
his brother.    One of these dogs, herein referred to as the

O'Connor dog, bit the plaintiff. It is not disputed, and there is no evidence to the contrary, that this dog was being exhibited at the show and was properly on the premises.

The evidence varies somewhat as to the precise circumstances in which the plaintiff was bitten. The plaintiff testified, in substance, that O'Connor was holding the O'Connor dog by a chain or leash attached to the dog's collar in the aisle close to the front of the row of benches or stalls on the plaintiff's left. As the plaintiff passed O'Connor, the O'Connor dog "jumped around from the left in back of O'Connor and grabbed the plaintiff's left ring finger and bit it. The plaintiff pulled his hand away, and the O'Connor dog made another grab and got the Splaine dog by the nose. There was some difficulty in separating the dogs after that. During the time that the dogs were being separated all that the plaintiff did was to hold on to the leash of his dog with his right hand and pull the dog away, and at no time did he put his hand on the O'Connor dog." At the time the plaintiff was bitten "there were no attendants around and the superintendent was not there."

Lyons testified that O'Connor took the O'Connor dog out of the "cage or stall" and "had him on a leash," that O'Connor stopped in the aisle and talked with Lyons "for a period of five or ten minutes." While he was talking there was sufficient room for the plaintiff "to go by with his dog." When the plaintiff "got there everything was peaceful." "The O'Connor dog went around the back of O'Connor, made a leap and a rush, and bit Splaine's finger; and then got Splaine's dog by the nose." "O'Connor's dog went after the plaintiff's dog, and he bit the plaintiff before he got the plaintiff's dog."

O'Connor testified that before the plaintiff was injured "the O'Connor dog was not off the bench." He was going to take the dog "downstairs that morning for the purpose of exercising him. He did not have any particular permission from anybody at the dog show. He unlocked a padlock on the strong wire door in front of the stall, then stooped down, reached in the stall and loosened the chain

by which the dog was tied to a ring at the back of the stall. As he did so the plaintiff had arrived at a point behind where O'Connor was freeing the dog. As the dog was unfastened, he jumped by O'Connor's side into the aisle, at which time the dog of Splaine was directly in front of the O'Connor bench, and in the fight that followed the finger of Splaine was injured. When the dogs were fighting Splaine made an effort to separate the dogs. When it was over Splaine's finger was bleeding." This witness testified further that "he did not see his dog bite Mr. Splaine. He did see his dog grab Mr. Splaine's dog by the nose and continue to keep that hold until he was separated."

A rule of the Eastern Dog Club, Inc., introduced in evidence provided in part that "No dogs may be absent from their stalls for the purpose of being exercised at any time for longer than fifteen minutes." There was no evidence that the O'Connor dog was absent from its bench or stall for more than fifteen minutes. Another rule provided that all "dogs must be supplied with suitable collars and chains."

There was evidence that the number of attendants at the show was "somewhat between twenty and fifty," that the defendant Eastern Dog Club, Inc., paid the attendants but that the other defendant instructed the attendants as to their duties. "The George F. Foley Dog Show Organization, Inc., had no attendants whose duty it was to see the aisles were kept clear of dogs for people passing and repassing in the aisles. On . . . [the day in question] there was nobody in the exhibition hall where Splaine was whose duty it was to keep the aisles clear. . . . The defendant, the George F. Foley Dog Show Organization, Inc., designated a specific place for the dogs to exercise at the show. This place was downstairs in the Mechanics Building. If a man wanted to exercise his dog he took the dog off the bench and took him downstairs to that space."

First. Clearly it could have been found that the plaintiff was a business visitor of the defendant, the Eastern Dog Club, Inc., to whom that defendant owed the duty to use reasonable care to keep the premises reasonably safe for the plaintiff's use. Reasonable care to keep the prem-

ises reasonably safe for the plaintiff from harm from the dogs on exhibition was within the scope of that duty. There was, however, no breach of that duty on the part of the defendant that constituted negligence unless the plaintiff's injury "was in its general nature a probable consequence of some act or omission for which the defendant was responsible." *Andrews* v. *Jordan Marsh Co.* 283 Mass. 158, 161, and cases cited. See *Creeger* v. *Springfield Rendering Co.* 293 Mass. 541, 544–545.

There was no evidence, nor is there any contention, that the plaintiff's injury was the consequence of any affirmative act of the defendant, the Eastern Dog Club, Inc. The plaintiff's case against this defendant rests solely on the omission of the defendant to take reasonable precaution to guard against such an injury. And a finding was not warranted that there was any such omission.

The presence of dogs on the premises was an essential feature of the show. And it could not have been found that it was unreasonable to permit dogs to be taken through the aisles for purposes incident to the show such as the purpose of being taken out for exercise. There was no evidence that the O'Connor dog was not being taken out for exercise, apart, at least, from the evidence that it remained in the aisle "for a period of five to ten minutes," while O'Connor was talking with Lyons.

"Dogs are regarded by the common law as ordinarily harmless animals." *Andrews* v. *Jordan Marsh Co.* 283 Mass. 158, 161. There was no evidence that, before the occurrence in question, the O'Connor dog had any dangerous propensities which were known, or should have been known, to this defendant or to any other person. The rule at common law, applicable to dogs, apart from statute, as well as to other domestic animals is that "If such animal is rightfully in the place where the mischief is done, unless it appears that the animal is vicious and that that fact is known to the owner or keeper, there is no liability." *Dix* v. *Somerset Coal Co.* 217 Mass. 146, 147. This rule was applied in *Goodwin* v. *E. B. Nelson Grocery Co.* 239 Mass. 232, where a customer at a grocery store was bitten by a

cat kept by the owner of the store, whose duty it was to use reasonable care to keep the premises reasonably safe for the use of such customers. The duty of the defendant Eastern Dog Club, Inc., was no different with respect to dogs exhibited at the show conducted by it except as the care required was affected by the circumstances attendant upon maintaining a dog show. Doubtless the defendant should have foreseen and guarded against any probable harmful consequences of the presence of many dogs at the show, of dogs being confined to benches or stalls for considerable periods, and of exhibitors passing through aisles with dogs. But we think that, even in the circumstances of a dog show, it could not rightly have been found that the injury to the plaintiff in its general nature was a probable consequence of the failure of the defendant to take precautions, by providing attendants or otherwise, to prevent a dog on exhibition from remaining in the aisle for a period of five or ten minutes, when held by the person in charge of it by a chain or leash, or to guard against such dog — having no dangerous propensities known, or that should have been known — biting an exhibitor passing through the aisle with another dog. In the circumstances disclosed by the evidence — as was said with respect to a somewhat different situation in *Andrews* v. *Jordan Marsh Co.* 283 Mass. 158, 164 — "there is no adequate reason for holding the defendant to a responsibility for the plaintiff's injuries greater than its responsibility at common law if it had been the owner or keeper of the dog." The case of *Cruickshank* v. *Brockton Agricultural Society*, 260 Mass. 283, does not require a different conclusion.

Second. The case against the defendant the George F. Foley Dog Show Organization, Inc., is not stronger for the plaintiff than the case against the defendant the Eastern Dog Club, Inc. and requires no separate consideration.

In each case the exceptions of the defendant are sustained, the verdict for the plaintiff is set aside, and a verdict for the defendant is to be entered in accordance with leave reserved.

*So ordered.*