## Brian Glidden vs. Nicholas Maglio
## (and a companion case[1]).

Essex. December 9, 1999. – February 2, 2000.

Present: Marshall, C.J., Abrams, Lynch, Greaney, Ireland, Spina, & Cowin, JJ.

*Practice, Civil,* Summary judgment. *Negligence,* Construction work, Scaffolding, Causation.

At the trial of a negligence action, the plaintiffs failed to proffer any evidence to explain the collapse of a scaffold erected on the defendant's property and, thus, did not establish any causal link between their injuries suffered in the collapse and the defendant's breach of any duty to them either as a homeowner or as a general contractor or any failure to have warned of any purported defect on the property: summary judgment was correctly entered in favor of the defendant. [696-698]

In a civil action alleging the defendant's strict liability for an asserted violation of G. L. c. 143, § 50, the judge correctly entered summary judgment in favor of the defendant, where that statute was a criminal statute that did not provide for any civil remedy. [698]

Plaintiffs in a civil action failed to proffer any evidence that any damages sustained by them were caused by the defendant's alleged violation of G. L. c. 143, § 51, and summary judgment was correctly entered for the defendant. [698-699]

Civil actions commenced in the Superior Court Department on May 8, 1996, and March 21, 1997, respectively.

The cases were consolidated and heard by *Allan van Gestel,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Paul L. Lees* for Brian Glidden.

*Salvatore J. Frontiero* for John Strong & another.

*Scott D. Peterson* for Nicholas Maglio.

Marshall, C.J. The plaintiffs brought these consolidated actions in the Superior Court alleging claims in negligence against the defendant, Nicholas Maglio, for "breach of a duty of care

---

[1]John Strong & another *vs.* Nicholas Maglio.

as the owner of a construction site, breach of his duty as a general contractor, and his failure to warn of a dangerous condition," according to the judge who heard the defendant's motions for summary judgment.[2] They also claimed damages for the defendant's alleged violations of G. L. c. 143, §§ 50, 51. The defendant moved for summary judgment, which a judge in the Superior Court allowed, and judgments entered for the defendant on all counts. The plaintiffs appealed, and we granted their application for direct appellate review. We now affirm.

1. *Facts.* We summarize the undisputed facts as determined by the motion judge. The defendant was the owner of a three-family house in Beverly, and lived in one of the apartments. He needed repairs done to the roof of his building and learned that one of his tenants, Gary Glidden (Gary), the brother of the plaintiff Brian Glidden (Brian), did roofing work. After soliciting from Gary a bid to fix the roof, the defendant hired Gary to perform the work. Gary then engaged Brian, the plaintiff John Strong (Strong), and another man to assist in the work. Prior to the start of work, Gary told the defendant that it would be his responsibility to secure a building permit for the roofing work. Sometime later, the defendant told Gary that he had obtained the building permit, when, in fact, he had not.

Staging or scaffolding was needed for some of the work on the roof to proceed. Before the scaffolding was erected, the defendant told Gary that placing ladders on the driveway would interfere with access to his property. Gary suggested using a system of "pump-jack scaffolding" to avoid any such interference, and the roofing work proceeded in that manner.[3] On the second day of work, a portion of the scaffolding collapsed,

---

[2]We note that the record appendix did not include the plaintiffs' complaints, defendant's answer, or defendant's motion for summary judgment. See Mass. R. A. P. 18 (a), as amended, 425 Mass. 1602 (1997) ("the appendix shall contain: (1) the relevant docket entries in the proceedings below; (2) any relevant portions of the pleadings, charge, findings, or opinion; (3) the judgment, order, or decision in question; and (4) any other parts of the record to which the parties wish to direct the particular attention of the court").

[3]Gary supplied all of the labor, materials, and equipment for the roofing job. This included the materials to erect the "pump-jack scaffolding." The defendant had no involvement in the scaffolding's erection or the selection of the scaffolding materials. The motion judge found that the defendant's involvement was limited to selecting the kind and color of the roofing shingles to be used on the job and helping to set the hourly wages for the workers hired by Gary. While the work was ongoing, the defendant would occasionally inspect

causing Brian and Strong to fall to the ground and sustain injuries.

2. *Discussion.* Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). A moving party may satisfy his burden by demonstrating that proof of an essential element of the plaintiff's case is unlikely to be forthcoming at trial. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

a. *Negligence claims.* The plaintiffs argue that they presented sufficient evidence to warrant a trial of each of their negligence claims. With respect to each such claim, the plaintiffs bear the burden of proving that the defendant committed a breach of the duty to use reasonable care, that the plaintiffs suffered actual loss, and that the defendant's negligence caused their loss. See Restatement (Second) of Torts § 281 (1965); J.R. Nolan & L.J. Sartorio, Tort Law § 204 (2d ed. 1989). Causation is an essential element of that proof.

The judge found as an undisputed fact that "[n]othing in the materials supplied to the Court explains the reason why the scaffolding collapsed." He also noted in his discussion of the legal issues that the injuries sustained by the plaintiffs "came from some unexplained fault with the pump-jack scaffolding." The plaintiffs point to nothing of substance to suggest that the judge erred in either respect. To the contrary, the record reflects that the plaintiffs failed to proffer any evidence explaining why the scaffold collapsed and therefore cannot establish any causal link between their injuries and the defendant's breach of any duty to them as either homeowner or general contractor, or because of any failure to warn of any purported defect on his property.

During his deposition, Gary speculated as to why the poles of the pump-jack snapped: "[I]t could have been a thousand different reasons. I thought it was either because of the wood, or it had pulled away from the house." Strong also made no determination as to what caused the scaffolding to collapse. He admitted, "I don't know why it collapsed. . . . I guessed, but I'm not sure, that maybe one of the poles, the wooden 2 x 4s maybe might have been dry. . . . I am speculating. I don't know." Brian also was uncertain as to what caused the scaffold-

its progress. He did not, however, supervise or direct the manner in which the work was carried out. Those details were left to Gary and his coworkers.

ing to collapse: "I can't be certain. I believe that the brackets that were nailed to the roof rafters — the house was probably a hundred years old — just probably the rotted roof rafters failed and the top of the scaffolding might have pulled out, which snapped it . . . in the middle between everything. I can't really be certain of that. I don't really know." He also testified that Gary had "speculated" about the cause of the collapse, adding, "it was only speculation from the pictures." In an affidavit submitted in opposition to the defendant's motions, a second-floor tenant at the time of the accident, stated that prior to the accident she heard an individual hit the right side of the house. Her statement made no connection between that episode and the collapse of the scaffolding. These unsubstantiated conjectures cannot support any claim that some property defect chargeable to the defendant caused (or even contributed) to the collapse of the scaffolding.[4]

The plaintiffs also contend that the defendant's failure to obtain a building permit precluded a possible inspection of his property prior to work commencing, and that, had such an inspection occurred, detection of any defect in the scaffolding might have followed. This conjecture is also insufficient to defeat summary judgment. The plaintiffs rely on the deposition testimony of Timothy Brennan, the building inspector of Beverly, who was not, however, the building inspector at the time of the accident. Even if we ignore whether Brennan was competent to provide any evidence to explain the cause of this accident, his deposition testimony, in the light most favorable to the plaintiffs, establishes nothing more than a building inspector might have inspected the scaffolding before the accident, and that if the failure of the scaffolding was caused by some visible defect as opposed to misuse, a building inspector might have imposed some corrective condition.[5] Even if the defendant was remiss in not obtaining a building permit, the plaintiffs have ad-

---

[4]The plaintiffs also produced no evidence tending to show that the defendant knew or should have known of any hazardous condition on his building. See *Barry* v. *Beverly Enter.-Mass., Inc.*, 418 Mass. 590, 593 (1994) (landowner who has no actual or constructive knowledge of allegedly hazardous condition so that it cannot reasonably remove or warn plaintiff of the danger, cannot be found to have violated duty of care).

[5]For example, looking at photographs of the scaffolding, Brennan testified that the staging "appears to be a large span" for that type of staging. Had he gone to the site "prior to the commencement" he said he would have ordered another pole to cut down the spans.

duced no evidence to support any conclusion, or even an inference, that the accident would have been prevented if the requisite permit had been obtained before the accident. No rational jury could find in the plaintiffs' favor on that issue based on the proffered evidence.[6]

b. *Statutory claims.* The plaintiffs allege that the defendant violated G. L. c. 143, §§ 50 and 51, and is strictly liable to them for the injuries they suffered in the scaffolding collapse. General Laws c. 143, § 50, makes it a crime, punishable by a fine, to "hinder[] or prevent[] or attempt[] to prevent [an authorized building inspection official] from entering any building, structure or enclosure or part thereof in the performance of his duty in the enforcement of the laws of the commonwealth." As the motion judge correctly reasoned, § 50 is a criminal statute that does not provide for any civil remedy. Summary judgment was correctly entered on this count.

Section 51, in contrast, may provide a basis for civil liability in damages.[7] See *St. Germaine* v. *Pendergast,* 411 Mass. 615, 619 (1992). The plaintiffs argue that the defendant as the "owner" of a "building" is strictly liable to them for damages caused by his "violation" of that statute.[8] The motion judge concluded that G. L. c. 143, § 51, did not apply to the defendant's three-family house in Beverly because it was not "the kind of commercial or public use structure" contemplated

---

[6]The motion judge found that the plaintiffs had not shown the requisite control necessary to impose a duty on the defendant. Because the plaintiffs have failed to meet their burden on the issue of causation, we need not decide whether they presented sufficient evidence to show that the defendant owed a duty of care to them sufficient to survive the defendant's motion for summary judgment. See *St. Germaine* v. *Pendergast,* 411 Mass. 615, 622-623 (1992) (employer of independent contractor not liable for harm caused to another by independent contractor's negligence, unless employer retained some control over manner in which work was done).

[7]General Laws c. 143, § 51, provides, in relevant part:

"The owner, lessee, mortgagee in possession or occupant, being the party in control, of a place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment or building shall comply with the provisions of this chapter and the state building code relative thereto, and such person shall be liable to any person injured for all damages caused by a violation of any said provisions."

[8]The plaintiffs allege that the defendant's failure to obtain the requisite building permit constitutes the "violation" that triggers application of the statute.

by that statute. We need not determine whether that conclusion is correct for the same reason we conclude that summary judgment on the negligence claims was correctly entered: the plaintiffs failed to proffer any evidence that any damages sustained by them were "caused by a violation" of the provisions of the statute.

*Judgments affirmed.*