Agnes, A.J.
1. Introduction
This is a civil action in which the defendants have filed a motion for summary judgment. The plaintiff claims that she suffered injuries, including a heart attack, as a result of witnessing a motor vehicle collision in which a vehicle operated by the defendant Andrea Proctor struck a nearby parked vehicle and injured the plaintiffs daughter who was standing in the roadway and leaning into the parked vehicle moments before the collision.
2. Facts
Viewing the evidence in the light most favorable to the plaintiff, as required by Mass.R.Civ.P. 56, a jury could find that on December 23, 2000, Janice Upgard (“plaintiff’), was standing and holding her grandson on a sidewalk of Baker Street, Gardner, Mass. The plaintiff had just come from her home on Baker Street where she and her daughter, Tammy Lynn Carleton (now Hansen) (“plaintiffs daughter”), were baking cookies. The plaintiff was aware that her daughter was leaning into the passenger compartment of a car parked about 30 yards away on Baker Street. The plaintiff saw a vehicle approaching in the direction in which the parked car was facing. When this second vehicle, which was being operated by the defendant Andrea Proctor (defendant), was about 5-6 car lengths away, plaintiff yelled to her daughter. The plaintiffs daughter was able to scramble into the parked car before it was side-swiped *249 by the defendant. The plaintiff shut her eyes before the impact and did not observe the collision. The defendant’s vehicle did not strike the plaintiff. The plaintiffs daughter suffered a laceration. Following the incident involving the two vehicles, the plaintiff returned to her home across the street to inform family members of the event and to call for an ambulance. The plaintiff tripped and fell as she was walking up the steps to her residence. She fell forward on her knees and was able to prevent her grandson, still in her arms, from striking the floor. The child did strike her chest area. The plaintiff rode in the ambulance which took her daughter to the hospital. She complained of chest pains on the way to the hospital. At the hospital, she was examined and admitted. The plaintiff has a history of heart problems for the two-year period before these events. According to her medical records, the plaintiff suffered a subendocardial infarction in 1998. At intake at the hospital by Dr. Tierney, the plaintiff reported that she had a chest pain that was unlike her “MI pain.”[1] The discharge note dated December 26, 2000, three days following the events in question states that her diagnosis was “Subendocardial myocardial infarction.” Additionally, the discharge note which is part of the record in this case states that
The patient gives a histoiy of arteriosclerotic heart disease for the last two years. She was admitted about 2 years ago to Leominster Hospital, sustained subendocardial myocardial infarction and cardiac catheterization at that time showed ?60% LAD lesion. She was brought to the emergency room after she was in an automobile accident involving her daughter. She developed chest pains on the way to the hospital relieved by nitroglycerin. She was placed on observation. Initial electrocardiogram CK levels were within normal limits. Repeat electrocardiogram and CK troponin I were consistent with subendocardial myocardial infarction. Last electrocardiogram showed sinus bradycardia and ST depression with T inversion in anterolateral leads. Troponin level was 0.50. During the hospital stay, she did not have any recurrence of chest pain. During the night of December 25, 2000, she did develop nausea. At that time she did have third-degree AV-blocking lasting for 8 seconds. It resolved spontaneously. Since then rhythm remains sinus. No arrhythmia or condition abnormality noted. Echocardiagram showed normal chest chamber, no focal wall motion abnormality, aortic insufficiency — mild ejection fraction about 55-60%.[2]
Defendants’ Memorandum in Support of Summary Judgment, exhibit I. The plaintiff was discharged to U.Mass. Medical Center by ambulance for further testing and evaluation on December 26,2004. There is no expert medical opinion testimony in the record establishing a link between the stressful event observed by the plaintiff and her subsequent heart attack.
3. There is a need for expert opinion testimony on the issue of legal causation
One of the elements that the plaintiff must prove in order to recover damages in this case is that any negligent conduct on the part of the defendant was the legal cause of her injuries. See Glidden v. Maglio, 430 Mass. 694, 696 (2000). Our law requires that “where the causation between an accident and the resulting physical or psychological ramifications is not a matter of common knowledge, the proof must rest on expert medical testimony.” Foley v. Kibrick, 12 Mass.App.Ct. 382, 385 (1981), citing Sevigny’s Case, 337 Mass. 747, 749 (1958), Casey’s Case, 348 Mass. 572, 574 (1964), and Hale’s Case, 4 Mass.App.Ct. 769 (1976). See also Imbimbo v. Ahrens, 360 Mass. 847 (1971) (“Even with such evidence, a mere mathematical likelihood of such connection is not sufficient”).[3] In circumstances in which a person experiences chest pains shortly after a stressful event, then slips and falls down while ascending a flight of stairs, and then at some unspecified time within the next several days has a heart attack, the causal relationship between the stressful event and the heart attack cannot be established on the basis of our common human experience of cause and effect in the absence of expert medical opinion testimony. Lisbon v. Contributory Retirement Appeal Board, 41 Mass.App.Ct. 246,253 n.7 (1996). This is particularly true in a case such as this in which the plaintiff has a recent, pre-existing medical histoiy involving heart problems. Contrast Lovely's Case, 336 Mass. 512, 515-16 (1957) (a layman could reasonably infer without expert testimony that a strain caused a simple hernia).
ORDER
For the above reasons, the defendants’ motion for summary judgment is ALLOWED.

The court assumes that the reference in the plaintiffs records to “MI” refers to myocardial infarction. Dr. Tierney’s note states that “(t]he patient states that this chest pain was substernal which was different from her MI pain which like (sic) a cement block on her chest. The patient did not believe this was heartburn but does state herself that she is not sure if this was actually angina-like pain.” Defendants’ Memorandum in Support of Summary Judgment, exhibit G.

The plaintiffs medical records also include a record of an elective cardiac catheterization performed on December 26, 2000 which reveals a 50-60% lesion in the mid-segment of the left anterior arteiy. Defendants’ Memorandum in Support of Summary Judgment, exhibit K.

The difference between evidence sufficient to meet the' plaintiffs burden of proof on the issue of causation and evidence that establishes a mere possibility of a cause and effect relationship was the subject of King's Case, 352 Mass. 488, 491-92 (1967), in which a physician had expressed the view that trauma could accelerate the growth of a cancer. The Court made this observation: “There are limits to the probative value of expert opinion. It will be disregarded where it amounts to no more than mere speculation or a guess from subordinate facts that do not give adequate support to the conclusion reached. We think that Dr. Sagall’s opinion, given maximum weight, expressed no more than a mathematical likelihood that the employee’s death was causally related to his accident ... It is not enough that mathematically the *250 chances somewhat favor a proposition to be proved ... [TJhat proposition is proved by a preponderance of the evidence if it is made to appear more likely or probable in the sense that actual belief in its truth, derived from the evidence, exists in the . . . minds of the tribunal. . .” (Citations and quotations omitted.) As Justice Lummus put it, “[w]here the relation of cause and effect between two facts has to be proved, the testimony of an expert that such relation exists ... or probably exists . . . has been held enough. But the testimony of an expert that such relation is possible, conceivable or reasonable, without more, leaves the issue trembling in the balance.” DeFilippo’s Case, 284 Mass. 531, 534-35 (1933).