NOAH LIEBERMAN[1] *vs.* EDWARD POWERS & another.[2]

No. 05-P-1296.

Suffolk. December 5, 2006. - September 26, 2007.

Present: RAPOZA, C.J., DUFFLY, & VUONO, JJ.

*Animal. Negligence,* Design, Causation, Proximate cause, Foreseeability of harm.

In an action alleging that injuries inflicted by a cat on a five year old child visiting an animal shelter's "cat lounge" were caused by the defendants' negligent design and maintenance of the cat lounge, the Superior Court judge erred in granting summary judgment in favor of the defendants, where there was a triable issue of fact regarding causation, given the plaintiff's experts' opinions that an ordinarily prudent person in the circumstances of this case — which included the defendants' knowledge regarding the behavior (and potential for aggression) of cats — would have taken additional steps to ensure the safety of visitors to the cat lounge, and given evidence that the cat lounge had several flaws that had long been known to create stress in cats and that likely could have caused the injury. [242-245]

CIVIL ACTION commenced in the Superior Court Department on October 16, 2002.

The case was heard by *Diane M. Kottmyer,* J., on a motion for summary judgment.

*Alice Olsen Mann (Steven H. Schafer* with her) for the plaintiff.

*Joseph C. Abate* for the defendants.

VUONO, J. Noah Lieberman (Noah) sustained injuries when he was scratched and bitten by a cat while visiting a "cat lounge"[3] at the Sheldon branch animal shelter (the shelter), which was operated by the Animal Rescue League of Boston (ARL). Noah

---

[1]By his father and next friend, Mitchell Lieberman.

[2]Laura Caruso.

[3]A cat lounge is an enclosed area where members of the public are invited to interact with cats available for adoption.

brought this action, through his father, against Edward Powers, the director of operations of the ARL, and Laura Caruso, manager of the shelter, alleging that his injuries resulted from the defendants' negligent design and maintenance of the cat lounge. Powers and Caruso filed a motion for summary judgment arguing that they were not liable for Noah's injuries because they did not know or have reason to know that the cat would attack. A Superior Court judge granted summary judgment in favor of Powers and Caruso, concluding that they were not liable as a matter of law because the evidence was insufficient to support a finding of causation. We reverse the judgment. .

1. *The facts.* We take the facts from the materials submitted on summary judgment in the light most favorable to the plaintiffs. See *Foster* v. *Group Health Inc.*, 444 Mass. 668, 672 (2005). On February 5, 2000, five year old Noah went to the shelter with his parents to look for a cat to adopt. Neither Powers nor Caruso was at the shelter when Noah visited, but a staff member allowed Noah and his mother to enter the cat lounge. Almost immediately after they entered the room, a cat leaped off a shelf onto Noah's head. Noah's mother acted quickly and removed the cat. Noah began to bleed profusely and was taken to the hospital by ambulance. Noah suffered scalp and facial wounds that required plastic surgery and a rabies vaccine. The cat was euthanized that day.

The shelter's cat lounge was created and promoted by Caruso, who received permission from Powers to open the room. Caruso's goal was to increase adoptions of older cats. The room was small, measuring nine feet, six inches by five feet, four inches, or approximately fifty square feet, and had formerly served as a staff lounge. The room contained lockers, two plastic chairs, and a plastic sofa, as well as one to three scratching posts, one litter box, and one feeding bowl. There were two perches "on a gray device," a kennel, and one piece of cat furniture. The laundry was located behind the cat lounge, so that staff were required to pass through the lounge going to and from the laundry. Although Caruso had visited other shelters that had similar cat lounges, she did not confer with other organizations or shelters, or obtain guidelines from them in connection with converting the staff lounge into a cat lounge.

Caruso allowed five to seven cats in the lounge at a time, but there was no limit on the number of people who could be in the lounge visiting with the cats. The lounge was not monitored by staff or volunteers when visitors were present. The cats roamed freely in the cat lounge, but were returned to their cages at night, where they were also fed. Prior to being allowed in the lounge with members of the public, a cat was required to have an acclimation period. During that period, other cats were in the lounge, but staff were not present to monitor them. The acclimation period could be as short as three hours.

The cat involved here had been brought to the shelter on January 10, 2000, by Jane Janess, who reported that she had rescued the cat from a tree. The cat did not attempt to bite or scratch during the rescue, nor did he hiss or growl. He did not show any signs of aggression nor give any indication that he was anything but "a gentle, docile animal." Janess described the cat as "a sweetheart." The cat, like all other animals brought to the shelter, was screened by the staff to determine age, health, and temperament. During the screening process, the cat was vaccinated and neutered, and his nails were trimmed. Aware that some cats may not immediately demonstrate aggressive traits, the ARL did not permit an animal to be in contact with members of the general public for a period of two to seven days. After an unspecified period of time, the cat was placed in the cat lounge. According to Caruso, the cat had not demonstrated an aggressive nature prior to the incident with Noah.

The summary judgment record also includes two affidavits submitted by the plaintiff to establish that (1) the defendants' conduct fell below industry standards; (2) under the circumstances it was foreseeable that a cat could severely harm a visitor; and (3) the defendants' actions caused the situation that resulted in the cat's attack on Noah. Dilara Parry,[4] a behaviorist and cat specialist, concluded that the defendants acted negligently in connection with the design of the cat lounge by providing an inade-

---

[4]Parry's qualifications are set forth in the first two paragraphs of her affidavit: "I hold a a Bachelor of Arts in Psychology and in Comparative Literature from Oberlin College, with coursework in Animal Behavior. I have worked with animals since 1991. For eleven of those years, I worked in animal shelters and am familiar with the objectives and the limitations of

quate number of litter boxes and food bowls, and that the location of the lounge next to the laundry room could lead to stress for cats. Parry summarized her opinion as follows:

> "[T]he attack on Noah Lieberman was entirely foreseeable, considering the configuration, set up, and use of the cat lounge at the [shelter]. As discussed above, the cat lounge should never have been used for that purpose in the first place, and visitors, especially children, should not have had unsupervised access to the lounge. Given the degree of aggression that [the cat] demonstrated, he was likely in a very high state of arousal or stress when he attacked Noah. Many aspects pertaining to the cat lounge contributed to this aggression. Aggression in cats is not always predictable, but it is accompanied by signs, sometimes subtle, including changes in body language. Although the cat lounge should never have been used for that purpose, and although Noah and his mother should never have been given access to the lounge, had trained staff been present to monitor the cats in the cat lounge, the attack could likely have been avoided."

Nicholas Dodman,[5] a professor at Tufts University School of Veterinary Medicine, reached the same conclusion. His affidavit states that Noah's injury was caused by an aggressive cat that "was held in a room that was too small and that had other significant inadequacies, including the lack of direct supervision

---

animal shelter programs.

"Currently, I serve as the coordinator of the Cat Behavior and Socialization Program for the San Francisco Society for the Prevention of Cruelty to Animals in San Francisco, California. In that position, which I have held since 1995, I have designed and supervised the implementation of an evaluation format and rating system for shelter cats. The objective of the evaluation process is to assess which cats are safe for the volunteers, staff and public to handle, and to better assist persons seeking to adopt cats. I have served as a consultant to numerous shelters in the United States, Canada and New Zealand, having visited approximately 60 shelters to evaluate their existing cat adoption programs."

[5]Doctor Dodman described his qualifications as follows: "I am a Professor at Tufts University School of Veterinary Medicine in North Grafton, MA, where I am Head of the Animal Behavior Section and Director of the Behavior Clinic. I hold a Bachelor of Veterinary Medicine and Surgery, and I received a diploma in Veterinary Anesthesia. I am a diplomat of the American College of Veterinary Behaviorists and the American College of Veterinary Anesthesiologists."

by trained staff." His affidavit further states that, in his experience, the cat lounge was overcrowded and too small, and the cats were not adequately screened. Accordingly, Dr. Dodman explains: "These factors created a situation where an attack such as the one on Noah Lieberman was foreseeable, particularly so because the defendants did not provide adequate supervision in the lounge which they filled with minimally assessed cats."

2. *Standard of review.* Summary judgment is appropriate where there are no disputes of material fact, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002). "The moving party may prevail by showing that the nonmoving party has no reasonable expectation of proving an essential element of [the] case at trial." *Jupin* v. *Kask,* 447 Mass. 141, 146 (2006). See *Kourouvacilis* v. *General Motors Corp.,* 410 Mass. 706, 716 (1991). In a negligence case, a plaintiff has to show that the defendant breached a duty of care, that the plaintiff suffered a loss, and that the defendant's breach caused the loss. *Glidden* v. *Maglio,* 430 Mass. 694, 696 (2000).

3. *Discussion.* The basis for the motion judge's decision was the lack of evidence of causation.[6] As causation is an essential element of a negligence claim, if such evidence is not forthcoming, the plaintiff will be unable to make out his case. *Ibid.* Viewing the record in the plaintiff's favor, we conclude that the Superior Court judge was incorrect in ruling that the evidence "is insufficient to establish negligence on the part of either

---

[6]The defendants, who have not appealed, take issue in their brief with the motion judge's assumption that the summary judgment record was sufficient to establish their individual liability. The issue is properly before us. See *Boston Edison Co.* v. *Boston Redev. Authy.,* 374 Mass. 37, 43 & n.5 (1977) (a party who prevailed in the trial court may defend a judgment on any ground asserted in that court). The defendants' argument — that since neither Powers nor Caruso directly participated in the incident or negligently ignored a known danger, they cannot be held individually responsible — is unavailing. Supervisory responsibility, by itself, without evidence in the record that the individual defendant participated in acts causing injury to the plaintiff, is not sufficient to establish personal liability. See *Addis* v. *Steele,* 38 Mass. App. Ct. 433, 439 (1995). Here, however, based on Power's and Caruso's deposition testimony concerning their direct involvement in the establishment of the cat lounge, the plaintiff's claims of individual liability at least present a triable issue for the jury.

Caruso or Powers that was a substantial contributing cause to the attack on Noah."

The judge's reasoning was based on the common-law rule that a "plaintiff cannot recover unless there was evidence warranting a finding that the cat was vicious to the knowledge of the defendant, and that her injury followed as the natural and probable consequence of the defendant's wrong in keeping such an animal." *Goodwin* v. *E.B. Nelson Grocery Co.*, 239 Mass. 232, 234 (1921). Since there was no evidence that the cat had exhibited vicious tendencies before the incident with Noah, the motion judge concluded that neither defendant was liable. The common-law rule, which generally applies to pet owners, is inapplicable to this case, however, as the plaintiff here does not allege that the cat was inherently vicious, but rather that the conditions created by the defendants' negligently designed and operated cat lounge caused an otherwise docile animal to behave viciously.

Thus, the question to be decided is whether a finder of fact could reasonably conclude that, "in view of all the circumstances, an ordinarily prudent person in the defendant's position would have taken steps, not taken [here] by the defendant[s], to prevent the accident that occurred." *Toubiana* v. *Priestly*, 402 Mass. 84, 88-89 (1988). We are satisfied that, on this record, the plaintiff has provided sufficient evidence, in the form of expert opinion, that an ordinarily prudent person in the circumstances of this case — which include the defendants' knowledge regarding the behavior (and potential for aggression) of cats — would have taken additional steps to ensure the safety of visitors to the cat lounge.

The motion judge further determined that the defendants were not liable because the risk of harm which resulted in Noah's injury is not one which could be reasonably anticipated. In addition to showing that the negligent conduct was the cause in fact of the injuries, a plaintiff must show that the conduct was the "proximate or legal cause of the injury as well." *Kent* v. *Commonwealth*, 437 Mass 312, 320 (2002). For negligent conduct to be the proximate cause of an injury, the plaintiff must show that the injury "was a foreseeable result" of the defendants' conduct. *Ibid.* See *Or* v. *Edwards*, 62 Mass. App. Ct. 475, 484-487 (2004).

In essence, the motion judge concluded that the cat's attack on Noah was unforeseeable because there were no circumstances that alerted the defendants to the possibility that the cat would act aggressively. It is irrelevant whether the defendants foresaw or should have foreseen the specific danger that occurred, i.e., that the cat would attack Noah. As stated in *Glick* v. *Prince Italian Foods of Saugus, Inc.*, 25 Mass. App. Ct. 901, 902 (1987), citing *Carey* v. *New Yorker of Worcester, Inc.* 355 Mass. 450, 454 (1969), "[p]roximate cause does not require the particular act which caused the injury to have been foreseen, only that the general character and probability of the injury be foreseeable." See *Jupin* v. *Kask, supra* at 149-150 n.8. At the very least, the defendants should have foreseen that the small size of the room, as well as the set-up (one food bowl, one litter box, two perches) and unsupervised operation of the cat lounge was such that it was more likely than not to increase stress in cats, which in turn made it more likely than not that the cats would behave aggressively.

"The question of causation is generally one of fact for the jury. A plaintiff need only show that there was greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause. An expert's opinion based on facts in evidence is sufficient proof of causation." *Mullins* v. *Pine Minor College*, 389 Mass. 47, 58 (1983) (citations and quotations omitted). We reject the motion judge's assessment of the experts' affidavits as lacking a basis in facts that are more than possibilities and speculation. On the contrary, the affidavits specifically noted that the cat lounge had several flaws that have long been known to create stress in cats and that could *likely* have caused the injury. Contrast *Goffredo* v. *Mercedes-Benz Truck Co.*, 402 Mass. 97, 102-103 (1988) (statement that loose latex "could have" caused door to open is mere statement of possibility).

In sum, we conclude that there exists a triable issue of fact regarding causation. We therefore reverse summary judgment and leave it to a fact finder to determine whether the defendants breached their duty to exercise reasonable care in designing and maintaining the cat lounge, and, if so, whether the defendants'

breach and the damages, i.e., Noah's injuries, were causally related. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*