KILLIAN NUTT[1] *vs.* EMIL A. FLORIO & another.[2]

No. 08-P-81.

Middlesex. April 14, 2009. - October 19, 2009.

Present: COHEN, KATZMANN, & GRAINGER, JJ.

*Dog. Negligence,* One owning or controlling real estate, Duty to prevent harm, Foreseeability of harm.

Statement of the standard of review of a grant of summary judgment on a negligence claim. [485]

In a negligence action for personal injuries sustained by a minor plaintiff who was bitten by a pit bull terrier, the judge erred in granting summary judgment in favor of the defendants, who were the landlords of the property on which the owner of the dog lived, where there were genuine issues of material fact, proper for resolution by the jury, whether the dog, as a pit bull, had dangerous propensities; whether the defendants knew or reasonably should have known about those propensities (in light of complaints about the dog that the plaintiff's parents claimed to have made to the defendants); and if so, what actions by the defendants would have been reasonable, in light of their duty as landlords to protect a tenant from reasonably foreseeable risks of harm. [485-488]

CIVIL ACTION commenced in the Superior Court Department on January 9, 2006.

The case was heard by *Linda E. Giles*, J., on motions for summary judgment.

*Harry J. Vlachos* for the plaintiff.

*Karen Piso Nadeau* for the defendants.

KATZMANN, J. As a result of a bite by a pit bull terrier named Tiny, ten year old Killian Nutt (plaintiff) filed a multiple count complaint[3] in Superior Court against the dog's owner, Michael

---

[1]By his mother and next friend, Elise Hamblett.

[2]Clara E. Florio. Both Florios are sued individually and as trustees of the Emil A. Florio M&A Living Trust and the Clara E. Florio M&A Living Trust.

[3]The complaint also listed the plaintiff's two siblings, Shannan Nutt and

Keane,[4] and the owner's landlords, Emil and Clara Florio (defendants). Both parties moved for summary judgment. The defendants' motion was allowed as to all counts and the plaintiff's motion was denied. The plaintiff now appeals solely from the dismissal of the negligence count against the defendants. Informed by a Supreme Judicial Court opinion issued subsequent to the proceedings here, we reverse the grant of summary judgment for the defendants and remand for further proceedings.

*Background.* The summary judgment record here was developed largely through deposition testimony. "We recite the material facts in the light most favorable to [the plaintiff], as the nonmoving party." *Lyons* v. *Nutt*, 436 Mass. 244, 245 (2002). We draw all inferences from the underlying facts in favor of the party opposing summary judgment, and resolve all doubt as to genuine issues of material fact against the party moving for summary judgment. *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982). Although certain facts are controverted by the defendants, including those pertaining to notice, and the circumstances surrounding the incident, the evidence taken in the light most favorable to the plaintiff would permit a jury to find the following. The plaintiff and his family lived in an apartment in a four-family house on 109-111 Overland Road in Waltham (premises), which was owned by the defendants. Keane lived in another apartment at the premises, and owned Tiny. Keane had gotten Tiny two or three months prior to the incident from his son, who found him in the woods. On July 18, 2005, Keane, Keane's friend, and Tiny were sitting on the front porch steps of the premises, and the plaintiff was playing with a sprinkler in the driveway of another property adjacent to the premises. Tiny bolted from the porch, ran down the stairs, leapt into the air and over the retaining wall separating the properties, and bit the plaintiff multiple times on the leg. Tiny's attack was unprovoked. The bites caused serious damage to the plaintiff's leg, resulting in a four-day hospital stay. At the time of the biting, Tiny was unlicensed, was not vaccinated for rabies, and was unrestrained, in violation of the municipal leash law.

Tarryn Nutt, as plaintiffs, along with his father, Lawrence Nutt. They are not parties to this appeal.

[4]The plaintiff did not appeal from the dismissal of the two counts against Keane, who is not a party to this appeal.

Prior to the incident, the plaintiff's father, Lawrence Nutt, and his mother, Elise Hamblett, observed that Tiny exhibited aggressive behavior. They called the defendants on several occasions to complain about the presence of dogs at the premises, most notably Tiny. They complained that Tiny generally ran around unleashed and aggressive, causing them to have safety concerns; and that Tiny mounted their children at various times and Hamblett on another occasion.[5]

Earlier in the summer of 2005, Grace Morrell, another tenant at the premises, also had an encounter with a pit bull owned by Keane. While unloading groceries from her vehicle, Morrell watched in fear as the pit bull ran toward her. The dog stopped short of Morrell and then returned to Keane, who was watching from a few feet away. Spooked by the event, Morrell reported the incident to James Florio, the defendants' son, and chastised Keane for not keeping his dog on a leash. Although Morrell testified that the dog that charged her was not the same dog that bit the plaintiff, there was other evidence that Keane had only one pit bull.

There was testimony from Emil Florio that he did not allow tenants to have any pets without his approval and that he had not approved Tiny. He also testified that seven or eight years earlier Lawrence Nutt had kept dogs at the premises and Florio made him get rid of them. Nutt also testified that Florio made him get rid of dogs he owned at the premises. Hamblett testified that she and Nutt received a letter from the landlord in 1997 stating that no dogs were allowed on the premises and as a result, she and Nutt got rid of their two dogs.

Finally, Ann Campobasso, inspector of animals in Waltham for six years, testified that the pit bull was the breed of dog that was involved in more human biting cases than any other breed.

In count 4, alleging negligence against the defendants, the plaintiff claimed that the defendants "allowed [Tiny] to roam unrestrained in and around the Premises"; that "as owners and landlords of the Premises, [they] had a duty to keep their tenants, in this case the plaintiff[], free from an unreasonable risk of harm"; and that "[b]y allowing Keane, a tenant, to keep on the Premises the very aggressive pit bull terrier dog . . . in the

---

[5]The parties also described Tiny's behavior as "humping" the children's legs.

presence of the young tenant children," "they breached their duty of reasonable care to the plaintiff[] and caused the plaintiff[] harm." Based on the summary judgment record, the judge ruled that the plaintiff's family's fears of Tiny were "subjective," that they failed to establish that Tiny had any dangerous propensities, and that from all the record revealed, Keane's dog simply acted as dogs do naturally. Accordingly, the judge allowed summary judgment for the defendants as matter of law on the negligence claim.

*Discussion.* A. *Standard of review.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Nelson* v. *Salem State College*, 446 Mass. 525, 530 (2006), quoting from *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). The same standard applies to appeals of summary judgments, and appeals are subject to de novo review of this court. See *Kennie* v. *Natural Resource Dept. of Dennis*, 69 Mass. App. Ct. 158, 161 (2007).

Generally, courts do not resolve negligence claims through summary judgment because the question of negligence is usually a fact determination for the jury. See *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 794 (1987); *Roderick* v. *Brandy Hill Co.*, 36 Mass. App. Ct. 948, 949 (1994). That rule is not absolute, however, especially where the moving party can establish that its opponent cannot prove an essential element of its claim. *Manning* v. *Nobile*, 411 Mass. 382, 388 (1991). In a negligence case, a plaintiff must show that the defendant breached a duty of care, that the plaintiff suffered a loss, and that the defendant's breach caused the loss. See *Glidden* v. *Maglio*, 430 Mass. 694, 696 (2000); *Lieberman* v. *Powers*, 70 Mass. App. Ct. 238, 242 (2007). See also Restatement (Second) of Torts § 281 (1965).

B. *Negligence claim.* We are concerned here with the potential liability of the defendants, who were the owners of the property where Tiny lived, but were not the owners or keepers of Tiny. Thus, this is not a case governed by the strict liability "Dog-Bite statute," G. L. c. 140, § 155, under which "the owner or keeper of a dog is liable . . . for injury resulting from an act of the dog without proof . . . that its owners or keeper was negligent

or otherwise at fault, or knew, or had reason to know, that the dog had any extraordinary, dangerous propensity, and even without proof that the dog in fact had any such propensity." *Rossi* v. *Del-Duca*, 344 Mass. 66, 69 (1962), quoting from *Leone* v. *Falco*, 292 Mass. 299, 300 (1935). In this case, we apply common-law principles, given that there is no controlling statute. See *Audette* v. *Commonwealth*, 63 Mass. App. Ct. 727, 736 (2005). See also *Andrews* v. *Jordan Marsh Co.*, 283 Mass. 158, 162 (1933) (if "no statute intervenes, the liability for bodily injuries caused by dogs falls within the general principles governing liability for injuries caused by animals ordinarily harmless"). As owners of the property, the defendants owed a duty of reasonable care to the plaintiff. See *Mounsey* v. *Ellard*, 363 Mass. 693, 707 (1973). See also *Brown* v. *Bolduc*, 29 Mass. App. Ct. 909, 910 (1990) (a person who is not an owner of a dog may still owe a duty to exercise reasonable care to protect the plaintiff from harm caused by the dog). Such a duty, however, does not make a landowner an insurer of her property. *Mounsey, supra* at 709.

Under the common-law principles applicable here, the plaintiff cannot recover from the defendants without evidence that they knew or reasonably should have known that the dog had dangerous propensities.[6] See *Goodwin* v. *E.B. Nelson Grocery Co.*, 239 Mass. 232, 234 (1921); *Splaine* v. *Eastern Dog Club, Inc.*, 306 Mass. 381, 385 (1940). See also *Audette* v. *Commonwealth*, 63 Mass. App. Ct. at 736. As a general principle, knowledge of the mere presence of the dog on the landlord's property is insufficient, as "[d]ogs are regarded by the common law as ordinarily harmless animals." *Splaine* v. *Eastern Dog Club*,

---

[6]The plaintiff does not argue that we should pronounce a rule that pit bull terriers are inherently dangerous by virtue of their breed, thereby in effect creating a new cause of action by imposing strict liability upon owners of properties where they are kept. We thus do not address such an argument, and in any event, the decision to create "a species-specific standard of care" is likely one for the Legislature. See *Ferrara* v. *Marra*, 823 A.2d 1134, 1138 (R.I. 2003) (in a negligence suit arising from a bite inflicted by a pit bull, the Rhode Island Supreme Court noted that while "some states and municipalities successfully regulate certain breeds of dogs such as pit bulls[, the Rhode Island] Legislature has not, as yet, chosen to create 'a species-specific standard of care' "; judge "properly declined the invitation [to impose strict liability upon pit bull owners] because the creation of a new cause of action should be left to the Legislature") (citations omitted).

*Inc.*, 306 Mass. at 385, quoting from *Andrews* v. *Jordan Marsh Co.*, 283 Mass. at 161. Our assessment of the defendants' knowledge of Tiny's propensities, however, is informed by a decision of the Supreme Judicial Court issued after the summary judgment here and thus not available to the judge in the proceedings below. There, in the criminal context, the court observed that the pit bull is a breed "commonly known to be aggressive."[7] *Commonwealth* v. *Santiago*, 452 Mass. 573, 577-578 (2008). The court justified an exception to the "knock and announce" rule for the execution of a search warrant where, among other factors, on the premises to be searched was a pit bull — an animal the court stated was "known to be dangerous and aggressive" — that could be used to confront the officers. *Id.* at 578.[8]

While the defendants may not be held strictly liable by virtue of Tiny's breed, knowledge of that breed and its propensities may properly be a factor to be considered in determining whether the defendants were negligent under common-law principles. At issue, then, is whether Tiny had dangerous propensities, whether the defendants knew or should have known about them, and, if so, what actions by the defendants would have been reasonable, in light of their duty as landlords "to protect tenants from reasonably foreseeable risks of harm." *Or* v. *Edwards*, 62 Mass. App. Ct. 475, 484 (2004). See *Griffiths* v. *Campbell*, 425 Mass. 31, 34 (1997). See also *Toubiana* v. *Priestly*, 402 Mass. 84, 88-89 (1988) (question was whether fact finder could reasonably conclude that, "in view of all the circumstances, an ordinarily prudent person in the defendant's position would have taken steps, not taken [here] by the defendant[s], to prevent the accident that occurred").

---

[7]There appears to be no dispute among the parties here that Tiny is a pit bull. We note, however, that the term may describe any number of breeds. See *American Dog Owners Assn.* v. *Lynn*, 404 Mass. 73, 79-80 (1989) (while "some dogs which, because of registration, known parentage or close conformance in appearance to commonly accepted standards representative of 'Pit Bull,' would be 'commonly understood' to be 'Pit Bulls,' " city's pit bull ban was void for vagueness where identification of dog as "pit bull" did not provide ascertainable standards for enforcement).

[8]Regarding the pit bull, Justice Cowin observed in concurrence that "the fact that the dog is in the home and is of a breed known to be dangerous, either in the officers' own experience or through common knowledge, should be sufficient" for a "no-knock" warrant to issue. *Santiago, supra* at 579.

Reviewing the record de novo, we think that these questions create a genuine issue of material fact and, as such, are proper for the resolution by the jury. Compare *Audette* v. *Commonwealth*, 63 Mass. App. Ct. at 736-737 (summary judgment was properly allowed where there was no evidence that the defendants knew of the dog's allegedly vicious propensities).[9] Here, questions of fact exist as to Tiny's dangerous propensities as well as the defendants' knowledge of those propensities in light of the complaints claimed to have been made by the plaintiff's parents to the defendants. These issues are all matters for the fact finder.[10] Accordingly, summary judgment was inappropriate. The matter is reversed and remanded for proceedings consistent with this opinion.

*So ordered.*

[9]In *Audette*, the plaintiff argued that the defendant's agent knew of the police dog's vicious·propensities because the agent trained the dog to apprehend suspects. *Audette, supra* at 736. We ruled that the simple fact that the dog was trained for police work, without more, was not enough to establish that the defendant knew of the dog's dangerous propensities. *Id.* at 737.

[10]Courts in other jurisdictions have reversed summary judgments in favor of landlords where, as here, there was a genuine issue of material fact as to a landlord's knowledge of the dog's alleged dangerous propensities. For example, as noted above, see *Ferrara* v. *Marra*, 823 A.2d at 1138 (summary judgment reversed where the landlord knew that pit bulls were kept on premises and there existed a question of fact as to the landlord's knowledge of the pit bulls' dangerous propensities due to the existence of a police report that one of the dogs had bitten a child at the premises). See also *Giaculli* v. *Bright*, 584 So. 2d 187, 189 (Fla. Dist. Ct. App. 1991) (summary judgment improperly granted to landlords where prior to an attack on her son, mother had a neighbor notify the managers that there was a pit bull on the premises that was barking and lunging at children; the fact that the dog was barking and lunging at children, particularly in light of the characteristics of pit bulls, was sufficient for a jury to reasonably conclude that the landlord was on notice as to the vicious propensity of the dog); *Bradford* v. *Coody*, 6 So. 3d 815, 819 (La. Ct. App. 2008) (reversing summary judgment where there was conflicting testimony regarding whether the dogs, including a pit bull, would bite if unleashed; whether the landlord saw the dogs chasing people; and other facts relevant to the landlord's knowledge of the dogs' dangerous propensities); *Dixon* v. *Frazini*, 188 A.D.2d 1054, 1054 (N.Y. 1992) (landlords were not entitled to summary judgment because triable issue of fact existed as to their knowledge of vicious propensities of husky dog where [1] plaintiff submitted affidavits which indicated that, whenever people neared the dog, it would run and attack the front fence area, growling, barking, and showing its teeth; and [2] plaintiff averred that landlords visited tenants to collect rent and, therefore, could have observed the dog's aggressive behavior).