AMANDA CURRERI[1] vs. HIKARU ISIHARA & others.[2]

No. 10-P-109.

Norfolk. December 14, 2010. - August 25, 2011.

Present: TRAINOR, KATZMANN, & RUBIN, JJ.

*Medical Malpractice. Negligence,* Medical malpractice, Loss of chance. *Evidence,* Expert opinion. *Witness,* Expert. *Practice, Civil,* Directed verdict.

In a civil action alleging medical malpractice on the part of the defendants (two doctors and their employer) for failing to diagnose the plaintiff's decedent's cancer, the judge erred in allowing the defendants' motion for a directed verdict, where the judge impermissibly truncated testimony from the plaintiff's expert, leading to the effect of excluding evidence (i.e., testimony to the effect that the cancer was "no worse than stage 2") that was admissible and that, in the circumstances of the case, would have satisfied the plaintiff's burden under a loss of chance theory that physician negligence had diminished or destroyed the decedent's chance of survival. [196-201]

Statement that, at the retrial of a civil action alleging medical malpractice on the part of the defendants (two doctors and their employer) for failing to diagnose the plaintiff's decedent's cancer, under a loss of chance theory, staging the cancer at the time of the alleged negligence would be critical to the ability to provide an accurate calculation of the decedent's probability of survival, and testimony that the tumor was smaller and therefore more susceptible to treatment would not adequately establish the required statistical evidence. [201-202]

CIVIL ACTION commenced in the Superior Court Department on July 25, 2005.

The case was tried before *Patrick F. Brady,* J.

*Glenn H. Haese* for the plaintiff.

*Christopher Lavoie* (*Charles J. Dunn, Jr.,* with him) for the defendants.

KATZMANN, J. The plaintiff, individually and in her capacity as

---

[1]Individually and as administratrix of the estate of Joseph Leonard Curreri, Jr.

[2]Jeffrey C. Roach and Harvard Vanguard Medical Associates, Inc.

administratrix of the estate of Joseph Leonard Curreri, Jr., brought an action in Superior Court for medical malpractice against the defendants, Hikaru Isihara, Jeffrey C. Roach, and Harvard Vanguard Medical Associates, Inc., for negligently failing to diagnose Curreri's cancer. The trial judge allowed the defendants' motion for a directed verdict due to the plaintiff's failure to satisfy her burden under a loss of chance theory that physician negligence had diminished or destroyed Curreri's chance of survival. The plaintiff now appeals.

*Background.* As developed at trial, the chronology of relevant events is not in dispute. On July 25, 2002, Curreri saw his primary care physician, Isihara, with complaints of hoarseness and acid reflux. Curreri had been treated with Prilosec for acid reflux since 2001. Isihara concluded that Curreri had laryngitis and esophageal reflux.

On August 28, 2002, Roach, an ear, nose, and throat (ENT) specialist, evaluated Curreri. At that time, Roach performed a fiberoptic examination of the larynx. This procedure revealed damage to the left vocal cord.[3] Roach's principal diagnosis was an unspecified voice disturbance, and he also considered reflux esophagitis. Roach doubled the dosage of Prilosec prescribed for Curreri and recommended a speech evaluation. On September 23, 2002, Curreri visited a speech therapist. At that session, Curreri presented "with poor voice quality and no voice power."

On October 29, 2002, Roach ordered that a videostroboscopy of the larynx be performed. There were no medical records indicating that a videostroboscopy ever was performed. On December 17, 2002, Curreri returned to visit Isihara and requested a second opinion from another ENT specialist. At that appointment, Isihara learned that Curreri had stopped taking the increased Prilosec dosage that Roach had prescribed, and Isihara prescribed a stronger medicine to treat Curreri's acid reflux.

On January 9, 2003, Curreri saw a second ENT specialist, Neil Bhattacharyya, pursuant to the referral from Isihara for a second opinion. At that appointment, Bhattacharyya performed a fiberoptic examination of the larynx, which "documented a

---

[3]Specifically, the test "revealed decreased left true vocal cord movement, atrophy of the left vocal cord, and a posterior commissure and false vocal fold area."

left true vocal cord immobility with bowing." After diagnosing the vocal cord immobility, Bhattacharyya ordered a computer tomography (CT) scan of Curreri's head, neck, and chest. This CT scan identified a mass next to his esophagus and another in his lung. Bhattacharyya found that the mass next to the esophagus had caused Curreri's left vocal cord paralysis by pressing on a nerve.

On February 28, 2003, biopsies of the masses identified by the CT scan were taken. The biopsy results revealed that Curreri had metastatic nonsmall cell lung carcinoma, i.e., lung cancer. A radiation oncologist subsequently staged the cancer at stage 3B. Curreri underwent chemotherapy and a variety of other treatments for his cancer. Treatment was unsuccessful and Curreri died on August 10, 2004.

*Procedural history.* In 2005, the plaintiff filed a complaint alleging medical malpractice, wrongful death, negligent infliction of emotional distress, unjust enrichment, and breach of contract. Following the Supreme Judicial Court's decision in *Matsuyama* v. *Birnbaum*, 452 Mass. 1 (2008), the plaintiff was allowed to amend her complaint to add a claim for loss of chance. The trial began on August 18, 2009. On the fourth day of trial, the judge allowed the defendants' motion for a directed verdict, because in the judge's view the plaintiff's expert witness, Dr. Sidney P. Kadish, a radiation oncologist, had failed to provide testimony specifically staging Curreri's cancer in July or August of 2002 (the time of the alleged malpractice). The judge ruled that the plaintiff had failed to meet her burden of proof necessary to have the loss of chance claim submitted to the jury.[4] This appeal followed.

*Discussion.* In a medical malpractice case, the burden is on the plaintiff to establish a causal connection between the alleged negligence of a defendant and any damages. *Glicklich* v. *Spievack*, 16 Mass. App. Ct. 488, 492 (1983). Traditionally, the "causal connection must generally be established by expert testimony

---

[4]The judge explained: "The reason that I directed verdicts is because it became apparent during the testimony of plaintiff's expert witness, Dr. Sidney Kadish, that the plaintiff would be unable to prove loss of chance injury in accordance with [*Matsuyama*]." The judge earlier had ruled that, without proof of loss of chance, i.e., the injury, none of the plaintiff's other claims could go forward either.

that the injury sustained was more probably than not a result of the doctor's negligence." *Ibid.* However, in 2008, the Supreme Judicial Court accepted the loss of chance doctrine in *Matsuyama,* *supra* at 3, allowing a plaintiff to establish causation "even if the possibility of recovery was less than even prior to the physician's tortious conduct."[5]

Under a loss of chance theory, a "plaintiff must prove by a preponderance of the evidence that the physician's negligence caused the plaintiff's injury, where the injury consists of the diminished likelihood of achieving a more favorable medical outcome." *Id.* at 17. The court explained: "[P]robability of survival is part of the patient's condition. When a physician's negligence diminishes or destroys a patient's chance of survival, the patient has suffered real injury. The patient has lost something of great value: a chance to survive, to be cured, or otherwise to achieve a more favorable medical outcome. . . . Thus we recognize loss of chance not as a theory of causation, but as a theory of injury." *Id.* at 16.

Cancer frequently is classified into separate stages, from stage 0 to stage 4, "with each higher stage signaling a more advanced cancer and carrying a statistically diminished chance for survival." *Id.* at 8. "The survival rate is often stated as a five-year survival rate, which is the percentage of people in a study or treatment group who are alive five years after diagnosis or treatment." *Id.* at 8 n.15, quoting from the National Cancer Institute's Dictionary of Cancer Terms.

A. *Exclusion of evidence.* On appeal, as below, the plaintiff claims that Isihara and Roach negligently failed to diagnose Curreri's cancer when he met with Isihara in July of 2002, and with Roach in August of 2002, and negligently failed to conduct imaging studies which would have assisted in that diagnosis.[6] The plaintiff argues that the judge "intervened and refused to allow Dr. Kadish to testify as to the staging of the cancer." The defendants respond that the plaintiff's expert

---

[5]To the extent footnote 1 of the memorandum of decision on the defendants' motion for directed verdict could be interpreted to suggest otherwise, that would be in error.

[6]Allegations that Isihara negligently failed to diagnose the cancer in March of 2002 were excluded by the judge because they lacked evidentiary support. The plaintiff has not appealed this ruling.

"was not precluded from opining about [Curreri's] alleged loss of chance; rather, [the expert] simply had no admissible opinion on the matter."

First, we consider whether the testimony that allegedly was excluded would have been admissible. During trial but outside the presence of the jury, prior to Kadish's testimony, plaintiff's counsel[7] read an interrogatory answer, representing to the judge that Kadish would testify, based on his loss of chance analysis, that "[i]f the medical condition of nonsmall cell lung cancer had been diagnosed at or near the times of either . . . July 25th or August 28th, with a reasonable degree of medical certainty, based on the evidence, Mr. Curreri would have been diagnosed no worse than stage 2 disease and possibly stage 1." That interrogatory answer further provided, in relevant part:

> "[W]ith a reasonable degree of medical certainty, based on the evidence available, Dr. Kadish will testify that when [Curreri] complained of hoarseness in July 2002, he had an earlier stage than that of February 2003, when he had Stage III B disease. Also with a reasonable degree of medical certainty, based on the evidence available, Dr. Kadish will testify that when [Curreri] complained of hoarseness in July 2002, that [he] had Stage II disease, and that he had a 40 to 50% chance to live 5 years after appropriate treatment, and the disease was more treatable. Since he was diagnosed in February 2003, with an advanced Stage III B, his chance of survival at that time was reduced to 5 to 10%. Accordingly, the delay may have caused a 30 to 45% loss of chance of 5 year survival. If the disease was at Stage I [when, according to the chart included in the interrogatory answer stating that the estimated five-year survival rate was fifty-five to seventy-five percent], then the percentages would be adjusted accordingly [and caused a forty-five to seventy percent loss of chance of five-year survival]."

The judge correctly ruled that an expert opinion that the cancer was "possibly stage 1" at the time of negligence was not sufficient to move the case forward for consideration by the jury. See *Goffredo* v. *Mercedes-Benz Truck Co.*, 402 Mass. 97,

---

[7]The plaintiff's trial counsel also represents her on appeal.

102-103 (1988) ("An expert opinion, stated in terms of pos-sibilities, does not satisfy the plaintiff's burden of proof"). See also *Poirier* v. *Plymouth*, 374 Mass. 206, 212 (1978) (on appeal of directed verdict, "the test has been stated as whether 'any-where in the evidence, from whatever source derived, any com-bination of circumstances could be found from which a reason-able inference could be drawn in favor of the plaintiff.' That the inferences be reasonable requires that they be based on 'prob-abilities rather than possibilities' and not the result of 'mere speculation and conjecture' " [citations omitted]). However, in our view — and as defense counsel acknowledged during oral argument before us — testimony that the cancer was "no worse than stage 2"[8] was admissible, and would in the context of the evidence here satisfy the plaintiff's burden against a directed verdict motion because it provides sufficiently definite evidence that at the time of the negligence the cancer was at a lesser stage than when the cancer actually was diagnosed. See discussion of *Matsuyama* damages formula, 452 Mass. at 27-29; *Renzi* v. *Pare-des*, 452 Mass. 38, 42 (2008) (in medical malpractice case alleg-ing failure to diagnose, expert testimony about range of potential stages for plaintiff's cancer was submitted to jury). See also *Sacco* v. *Roupenian*, 409 Mass. 25, 29-30 (1990) (in medical malpractice case alleging failure to diagnose, expert witness testi-fied that "the cancer was in stage one or stage zero" at the time of the negligence; court rejected argument that it was "necessary to know the exact stage of the cancer in order to infer whether the cancer was detectable").

Because the testimony that the cancer was "no worse than stage 2" would have been admissible, we turn our attention to the question whether the judge excluded this testimony. During the trial, plaintiff's counsel believed that the plaintiff was being asked to present evidence as to the specific stage of the cancer.[9] Similarly, Kadish at first appears to focus on his inability to identify the precise stage, given that no imaging studies had

---

[8] Testimony that the cancer was "no worse than stage 2" is functionally equivalent to testimony that the cancer was at "stage 1 or stage 2." For simplic-ity, we use the language from the loss of chance analysis, even when referenc-ing arguments by the parties that use the "stage 1 or stage 2" language.

[9] On the first day of the trial, plaintiff's counsel commented that what the judge "would be looking for is for Dr. Kadish to specifically testify as to a stage of cancer." The judge did not disagree with plaintiff's counsel's assessment.

been taken in July or August of 2002.[10] However, after the judge clarified that the expert only was testifying "based upon a reasonable degree of medical certainty," Kadish clarified, "I want to say that it was a lesser stage." At that point Kadish is interrupted by objections from defense counsel before stating again, "I can't say what the stage is. I don't know the stage." The judge subsequently sustained an objection to the plaintiff's attempt to further develop Kadish's lesser-stage testimony.[11] When asked about his loss of chance analysis, Kadish again appears focused on his inability to precisely stage the cancer.[12]

At the request of defense counsel, the judge held a bench conference to discuss Kadish's staging testimony. Plaintiff's counsel indicated that he believed Kadish would testify to a range of stages.[13] Furthermore, plaintiff's counsel asked the judge, "May I inquire of the witness again as to whether or not, based on his loss of chance study[14] . . . if he has an opinion as to the stage of cancer in August of 2002, based on this analysis?" The judge refused to allow additional testimony from Kadish "[b]ecause what [plaintiff's counsel is] suggesting is so far not admissible under what [Kadish] said so far."[15]

The judge subsequently permitted a voir dire examination of Kadish for purposes of developing an appellate record. In an effort to clarify what would be deemed sufficient testimony, plaintiff's counsel asked the judge, "[A]s I understand it, [you are] in the position where [you are] making a determination that

[10]Kadish testified, "I can't pinpoint the stage because there were no studies. . . . I can't say what the stage was."

[11]Plaintiff's counsel asked, "Do you have an opinion as to whether or not you believe if not the specific stage, would it have been at a lesser stage?"

[12]Kadish testified, "I endeavored to work that out, but I throw up some asterisks that I'm impaired from doing a — the full analysis because I don't have a firm notion as to what the stage was back in July and August of '02."

[13]Plaintiff's counsel answered the judge's question about staging by saying: "[The stage] is somewhere in here. It is at an earlier stage."

[14]This loss of chance study is the same analysis quoted, *supra*, which opined that the cancer was "no worse than stage 2" at the time of the alleged negligence.

[15]Similarly, plaintiff's counsel asked later in the bench conference: "If [Kadish] were to testify with regard to the loss of chance analysis, and then based on when he performed this analysis, he found it to be at stage 2, would the [judge] accept that?" The judge responded: "[Kadish] just said he couldn't do that. So, I'm afraid that's the end of the story."

the case would not proceed unless Dr. Kadish is able to basically say with a reasonable degree of medical certainty as to the stage of the cancer [in July and August of 2002]." The judge agreed with this assessment. During this voir dire, in response to plaintiff's counsel, Kadish stated that because imaging studies were not performed in July and August 2002, as he believed they should have been, he was unable to conclude the stage of the cancer that would have been disclosed in the studies.

Based on this record, it appears that plaintiff's counsel believed that he was prohibited from offering testimony that the cancer was "no worse than stage 2." Regardless of whether the judge intended to prohibit such testimony, the exchanges quoted, *supra*, fairly may be interpreted as precluding it. The testimony of plaintiff's expert impermissibly was truncated, leading to the exclusion of relevant, admissible evidence. Thus, she is entitled to a new trial.[16]

The defendants also argue that the plaintiff is barred from arguing that the testimony was excluded because she failed to make an offer of proof that Kadish would testify that Curreri's cancer was "no worse than stage 2." We disagree. The plaintiff did make an offer of proof in the bench conference.[17] See *Commonwealth* v. *Donovan*, 17 Mass. App. Ct. 83, 88 (1983)

---

[16]We note that the record reflects that the judge consistently endeavored to be fair and patient with all the parties. For example, he allowed an emergency motion for reconsideration of another judge's prior order precluding the plaintiff from offering evidence of Curreri's loss of chance of survival. During the trial, the judge permitted the plaintiff to file late the interrogatory answer relating to Kadish's expert testimony, and also permitted a voir dire of Kadish so that a record could be developed for appeal.

[17] JUDGE: "What would you like to bring out from Dr. Kadish? What is your offer of proof?"

PLAINTIFF'S COUNSEL: "I was going to actually take him through the loss of chance."

. . .

JUDGE: "So, what I mean is, if you'd explain it to me now what he would say."

PLAINTIFF'S COUNSEL: "Okay. What he would say is that the cancer is not at 3B at that point."

JUDGE: "Where is it then?"

PLAINTIFF'S COUNSEL: "It is somewhere in here. It is at an earlier stage."

(substance of excluded testimony was apparent from the questions defense counsel attempted to ask); Mass. G. Evid. § 103(a)(2) (2011). It is clear from the record that plaintiff's counsel was handing Kadish a copy of the loss of chance analysis when defense counsel requested a bench conference, and from plaintiff's counsel's multiple requests during the bench conference to be allowed to question Kadish about his loss of chance analysis (discussed *supra*) that the plaintiff sought to introduce testimony from this document.

B. *Sufficiency of evidence.* In the interests of judicial economy, we address an argument raised on appeal that may arise during the new trial proceedings. The plaintiff argues that putting the staging testimony aside, the evidence that was presented at trial was sufficient to meet her burden under a loss of chance theory. Specifically, the plaintiff points to Kadish's testimony that the tumor would have been smaller and therefore more susceptible to treatment at the time of the alleged negligence. The plaintiff argues that based on this testimony, "the jury could infer that . . . Curreri's chances of survival would have been greater had his cancer been diagnosed in July or August of 2002." We disagree.

In *Matsuyama*, the court clearly stated that "[t]he key [in loss of chance cases] is the reliability of the evidence available to the fact finder." 452 Mass. at 18. The court explained that "progress in medical science now makes it possible, at least with regard to certain medical conditions, to estimate a patient's probability of survival to a reasonable degree of medical certainty." *Id.* at 16. "The availability of such expert evidence on probabilities of survival makes it appropriate to recognize loss of chance as a form of injury." *Id.* at 19. Indeed, the damages calculation in a loss of chance case is dependent upon such probabilities of survival. *Id.* at 27.

In the case before us, staging the cancer at the time of the negligence is critical to the ability to provide an accurate calculation of the patient's probability of survival.[18] While we agree that it is not necessary to identify the precise stage (see discus-

---

[18]Kadish's loss of chance analysis acknowledges the critical link between the stages and the estimated five-year survival rates. The plaintiff does not suggest that survival rates could be calculated without staging the cancer.

sion, *supra*), testimony as to a stage or a range of stages is critical because this determines the probability of survival. Without probability of survival evidence, the jury does not have the information that it needs to properly conduct the loss of chance damages calculation. See *id.* at 27. Thus, testimony that the tumor was smaller and therefore more susceptible to treatment does not adequately establish the statistical evidence that is required by *Matsuyama*.[19]

*Conclusion.* The judgment on the defendants' motion for a directed verdict is vacated, and the case is remanded for a new trial, consistent with this opinion.

*So ordered.*

---

[19]The plaintiff also claims that expert testimony traditionally has not been required to show the extent of the injury caused by the alleged negligence and argues that "the question of the extent of the decrease in . . . Curreri's chance of survival should go to the finder of fact." The plaintiff does not cite any cases in support of this argument. As such, it does not rise to the level of proper appellate argument. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Moreover, the plaintiff does not provide any nonexpert testimony on staging or on probability of survival that could substitute for Kadish's expert testimony on these issues.