# United States Court of Appeals
## For the First Circuit

No. 19-1776

KEVIN CARROZZA,

Plaintiff, Appellant,

v.

CVS PHARMACY, INC.
d/b/a CVS PHARMACY,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

---

Before

Howard, Chief Judge,
Barron, Circuit Judge,
and Katzmann,[*] Judge.

---

Albert E. Grady for appellant.
Edward F. Mahoney, with whom Martin, Magnuson, McCarthy & Kenney was on brief, for appellees.

---

March 31, 2021

---

[*] Of the United States Court of International Trade, sitting by designation.

**KATZMANN, Judge.** This diversity case involves a pharmacist's dispensation of a prescription that triggered the pharmacy's internal warning system. The appeal presents issues regarding jurisdiction, negligence, Massachusetts consumer protection laws, and breach of warranty. Among the questions are whether expert testimony was required to prove breach of professional duty on the part of a pharmacist to establish a negligence claim, and whether a pharmacist's dispensation of prescribed medication constitutes a provision of services, governed by the common law, or is better characterized as a sale of goods, governed by the Massachusetts Uniform Commercial Code (UCC). Plaintiff Kevin Carrozza initiated this appeal to challenge the district court's findings on these and other questions, including its rulings on issues of jurisdiction and discovery, and to request reversal of the district court's grant of Defendant CVS Pharmacy, Inc.'s (CVS) motion for summary judgment. The district court found that the requirements of diversity jurisdiction had been satisfied and that the case was properly removed to federal court, that there was no genuine issue as to any material fact with respect to Carrozza's negligence and breach of warranty claims, that Carrozza's claim pursuant to Massachusetts General Laws Chapter 93A, § 2(a) (Chapter 93A) for unfair or deceptive practices therefore failed, and that summary judgment should be granted in favor of CVS. We affirm.

## I.    BACKGROUND[1]

In April 2015, Carrozza was prescribed Levaquin (the quinolone antibiotic levofloxacin) by his physician for treatment of a head cold.  He had the prescription filled at a CVS pharmacy in Bridgewater, Massachusetts.  Neither Carrozza nor his prescribing physician were aware at the time that Carrozza had any allergies or sensitivities to Levaquin or other quinolones.

The pharmacist on duty, Richard Wokoske, attempted to fill the prescription but was notified by his computer system of a "hard stop" warning indicating that Carrozza was allergic to quinolones.  Upon investigation, Wokoske identified conflicting information in Carrozza's CVS Patient Profile, including statements by Carrozza that he in fact had no quinolone allergy, and prior prescriptions of Levaquin and other quinolones in 2008, 2009 and 2010.  CVS policy is that a pharmacist confronted with conflicting information regarding a hard stop warning must exercise his individual judgment in deciding whether to dispense the prescription.  Wokoske chose to dispense the Levaquin to Carrozza.

Carrozza took the prescribed Levaquin and suffered what was later determined to be an allergic reaction.  Hospital records

---

[1] The uncontested factual information recounted in this section is taken largely from the district court's thorough recitation.  Carrozza v. CVS Pharmacy, Inc., 391 F. Supp. 3d 136, 140 (D. Mass. 2019).

from Carrozza's admission for this reaction indicate that he suffered a rash "atypical . . . for allergic reaction" but possibly indicating "erythema multiforme/very mild [Stevens-Johnson Syndrome (SJS)]." Carrozza asserts that he sustained "permanent ocular damages" as a result.

## A. **Procedural History**

In May of 2015, Carrozza sent CVS a pre-suit demand letter, as required by Massachusetts General Laws Chapter 93A § 9(3),[2] seeking $650,000 in damages. CVS responded, challenging

---

[2] A demand letter is a prerequisite to a suit under Chapter 93A for unfair or deceptive practices. "The purpose of the demand letter is to facilitate the settlement and damage assessment aspects of c. 93A and as such the letter and notice therein is a procedural requirement, the absence of which is a bar to suit." Entrialgo v. Twin City Dodge, Inc., 333 N.E.2d 202, 204 (Mass. 1975).

The statute provides:

At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent. Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner. In all other cases, if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing

- 4 -

the demand letter as improper, and disclaiming liability. CVS subsequently offered, and Carrozza rejected, a settlement of $5,000.

In October 2017, Carrozza filed suit against CVS in Brockton District Court in the Commonwealth of Massachusetts. CVS subsequently successfully removed the action to the United States District Court for the District of Massachusetts on diversity grounds. Carrozza twice moved to remand the litigation to state court, arguing that CVS's settlement offer indicated that the amount in controversy was less than $75,000, and that the action therefore did not support federal jurisdiction on a diversity basis. The district court denied Carrozza's motions to remand.

Ultimately, the district court identified three claims asserted by Carrozza: (1) a claim for "tort," which the court construed as a claim for negligence (Count 1), (2) a claim under Chapter 93A (Count 2), and (3) a claim for product liability, which the court construed as a claim for breach of implied warranty (Count 3).

On March 22, 2019, CVS filed a motion for summary judgment, and a motion to preclude the testimony of Carrozza's

---

violation of said section two [of Chapter 93A] or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two.
Mass. Gen. Laws ch. 93A, § 9(3).

expert witness, Dr. Kenneth Backman, under Federal Rule of Evidence 702.  On April 30, 2019, Carrozza filed a cross-motion for partial summary judgment and a motion to conduct an audio-visual deposition of Dr. Stephen Foster as an expert witness.  On July 8, 2019, the district court granted CVS's motion to preclude under Rule 702, denied Carrozza's motion to depose Dr. Foster as an improper attempt to reopen discovery, and issued summary judgment in favor of CVS.

Carrozza appealed the district court's issuance of summary judgment, and further appealed the district court's denial of his first motion to remand to state court, denial of his motion to depose Dr. Foster, and preclusion of Dr. Backman's testimony.

## II.  **ANALYSIS**

We conclude that Carrozza does not provide any adequate basis for reversing the district court's decisions.  With respect to the motion to remand, the district court's exercise of diversity jurisdiction was proper.  In addition, Carrozza fails to demonstrate abuse of discretion with respect to the district court's denial of his motion to conduct an audiovisual deposition of Dr. Foster or its grant of CVS's motion to preclude Dr. Backman's testimony.  Finally, Carrozza does not identify any genuine issue of material fact with respect to his negligence, product liability, or Chapter 93A claims.  Largely for the reasons set forth by the district court in its thorough opinion, we affirm

the denial of Carrozza's motions to remand and to depose Dr. Foster, the preclusion of Dr. Backman's testimony, and the granting of summary judgment in favor of CVS on all counts.

## A. **The District Court's Denial of Carrozza's Motion to Remand**

After being filed in Massachusetts state court, the litigation was removed to federal district court under 28 U.S.C. § 1332(a)(1), which grants district courts original subject matter jurisdiction (commonly known as "diversity jurisdiction") over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Removal was based on complete diversity of citizenship, with CVS being a citizen of Rhode Island[3] and Carrozza an undisputed citizen of Massachusetts, as well as on Carrozza's initial demand for $650,000. The district court acknowledged upon Carrozza's initial motion to remand that the complaint did not itself provide a damages figure, but nevertheless found that "[t]he amount demanded by [a] plaintiff in good faith is generally deemed to be the amount in controversy" and thus denied the motion. The district court also denied Carrozza's second motion, finding that "[t]he fact that most of the relevant events may have occurred in Massachusetts is

---

[3] CVS is a "Rhode Island Corporation with its principal place of business in Woonsocket, Rhode Island."

immaterial to the question of whether plaintiff and defendant are citizens of different states for diversity purposes."

## 1. Standard of Review

We review de novo a district court's denial of a motion to remand.  See, e.g., Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 33 (1st Cir. 1998).  Under a de novo standard, we will affirm the district court's denial if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).  The burden of establishing federal diversity jurisdiction rests on CVS as the party invoking federal jurisdiction.  Mass. Sch. of L., 142 F.3d at 33.

## 2. Carrozza's Claim Satisfies the Requirements for Diversity Jurisdiction Under 28 U.S.C. § 1332(a)(1)

Carrozza argues on appeal that the district court should have granted his motion to remand the litigation to state court. In particular, Carrozza claims that his Chapter 93A demand letter seeking $650,000 in damages was not evidence of an amount in controversy in excess of $75,000.  Rather, he argues that the amount sought in the demand letter was not a demand, given that the language "the official Demand for this Client is $650,000" was followed by "[w]e do not expect CVS to make an offer in that range at this time."  Carrozza asserts that the value of the claim should be based on CVS's settlement offer of $5,000 in response to the

- 8 -

demand letter, or on the damage assessments suggested by CVS's retained experts. Finally, Carrozza argues that the parties are not fully diverse, given that CVS's many Massachusetts locations render it essentially a resident of Massachusetts.

CVS responds that the district court properly concluded that "CVS established by a preponderance of the evidence that the amount in controversy exceeded $75,000." CVS notes that Carrozza's Chapter 93A demand letter documented total damages of $650,000, and his complaint further identified "medical bills in excess of $6,000." In addition, CVS notes that Carrozza's claim for attorney's fees – included in the amount in controversy under Chapter 93A – themselves exceed the jurisdictional limit as described in Carrozza's Amended Complaint and demand letter.

We determine that Carrozza's motion for remand was properly denied. Assuming that Carrozza's $650,000 demand was issued in good faith, his claim well exceeds the $75,000 threshold required to find diversity jurisdiction. Nor does Carrozza dispute that this was the amount requested in his pre-suit demand letter to CVS. Rather, he attempts to argue on appeal that, because the demand also stated that "[w]e do not expect [CVS] to make an offer in that range at this time. We do expect from [CVS] a tender offer of settlement," the demand letter does not in fact constitute a statement of the value of the claim. This attempt to prevent reliance on the demand letter is unpersuasive. Federal standards

govern the calculation of the amount in controversy. See Stewart v. Tupperware Corp., 356 F.3d 335, 339 (1st Cir. 2004) ("Although 'federal courts must, of course, look to state law to determine the nature and extent of the right to be enforced in a diversity case,' the 'determination of the value of the matter in controversy for purposes of federal jurisdiction is a federal question to be decided under federal standards.'" (quoting Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 352-53 (1961))). Accordingly, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41 (1st Cir. 2012) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938)). Indeed, "[a] plaintiff's 'general allegation of damages that meet the amount requirement suffices unless questioned by the opposing party or the court.'" Id. at 41-42 (quoting Stewart, 356 F.3d at 338). Here, the demand letter was expressly incorporated, and its allegations reiterated, by Carrozza's initial and amended complaints. Furthermore, it is Carrozza, not CVS, who questions his own assertion of damages. The demand letter is therefore appropriate to demonstrate the amount in controversy.[4]

---

[4] Other courts have found explicitly that demand letters may serve as the basis for determining the amount in controversy in jurisdictional disputes. See Molina v. Wal-Mart Stores Tex., L.P., 535 F. Supp. 2d 805, 808 (W.D. Tex. 2008) ("[T]he Court finds that the pre-suit demand letter is evidence that the amount in

We further note that Carrozza proposes no clear alternative to his initial $650,000 demand. Despite explicitly incorporating the demand letter below, he now argues that his claim is in fact worth far less than his initial demand – an amount which he characterizes as "only limited by the imagination of Claimant's Attorney." He does not specify how much less, or in fact provide any explanation for the alleged difference in demanded and actual damages. As we have noted, Carrozza also attempts to rely on CVS's expert testimony that his real damages are at best minimal, though in doing so he again declines to provide any explanation for the sudden (and substantial) change. In essence, it seems that Carrozza is attempting to contest the adequacy of the amount in controversy requirement by admitting at best error, and at worst deceit, regarding the scope and merits of his claim. Allowing remand on these grounds, and at this late stage of the litigation, would run entirely counter to the mission of the court to "secure the just, speedy, and inexpensive determination" of the

_____

controversy exceeds $75,000 . . . ."); Six v. Sweeney, No. 5:13CV3, 2013 WL 1910379, at *3 (N.D. W. Va. May 8, 2013) ("[P]laintiff's $100,000.00 demand letter received by the defendant less than one month prior to removal, clearly represents evidence that the amount in controversy has been satisfied."). Nor would Massachusetts law provide a basis for Carrozza's attempt to remand. See, e.g., Slaney v. Westwood Auto, Inc., 322 N.E.2d 768, 779 (Mass. 1975) (finding that a Chapter 93A demand letter functions in part as "a control on the amount of damages which the complainant can ultimately recover if he proves his case").

proceedings.  Fed. R. Civ. P. 1.[5]  In sum, the demand letter is appropriate to demonstrate amount in controversy.

We also reject Carrozza's attempt to argue that the parties are in fact not diverse given CVS's business presence in Massachusetts.  The laws regarding corporate citizenship are well established, and Carrozza has not shown that CVS, which is without dispute a Rhode Island corporation, qualifies as a Massachusetts citizen under the relevant tests.  See, e.g., Hertz Corp. v. Friend, 559 U.S. 77, 92-93 (2010).  Because there is complete diversity of citizenship between Carrozza and CVS and the amount in controversy exceeds $75,000, exclusive of interest and costs, removal from state court was proper and federal diversity jurisdiction was properly exercised by the district court.

## B. The Discovery Motions

In August 2018, Carrozza sought to admit into evidence an affidavit from Dr. C. Stephen Foster ("Foster Affidavit"), his treating ophthalmologist, under a state statutory exception to the hearsay rule for certain medical records.  See Mass. Gen. Laws ch. 233 § 79G.  Noting that the Massachusetts statute was not

---

[5] Carrozza also attempts to contest the amount in controversy by proposing a stipulated cap of $75,000 upon remand to state court.  Assuming arguendo stipulation offers a legitimate avenue for defeating diversity jurisdiction, there is no evidence that Carrozza raised this alternative at any point prior to appeal.  At this late stage, we reject stipulation as untimely and inappropriate.

- 12 -

applicable in federal court, and that Carrozza failed to comply with the applicable Federal Rules of Civil Procedure governing expert disclosures, the district court denied the motion to admit the Foster Affidavit.

In October 2018, Carrozza identified Dr. Kenneth Backman as an expert witness, and submitted an affidavit from Dr. Backman attesting that (1) Wokoske's dispensing of Levaquin despite the hard stop warning was a "breach of standard of care" and (2) Carrozza's ingestion of Levaquin was the likely cause of the injuries experienced by Carrozza. When deposed by CVS, however, Dr. Backman testified that he in fact did not know the standard of care applicable to pharmacists and had no firsthand knowledge of either the treatment and identification of SJS or Carrozza's alleged injuries. Dr. Backman further testified that his belief that Carrozza had developed SJS as a result of his Levaquin consumption was based entirely on the same Foster Affidavit previously rejected by the district court.

Following CVS's deposition of Dr. Backman, Carrozza again moved to admit the Foster Affidavit under Federal Rule of Evidence 803(6) or 803(4) as a record of a regularly conducted activity or a statement for purposes of medical diagnosis or treatment. The district court again denied the motion on the grounds that the Foster Affidavit constituted an expert report and not an admissible out-of-court statement.

- 13 -

Carrozza then moved to conduct an audiovisual deposition of Dr. Foster. The district court denied Carrozza's motion on the grounds that he failed to designate Dr. Foster as an expert witness or depose him as a fact witness during the proceedings despite having ample time to do so. The court found that Carrozza made no showing of good cause for the reopening of discovery, and thus his belated motion was "clearly . . . improper."

Finally, CVS moved to preclude the testimony of Dr. Backman under Federal Rule of Evidence 702. The district court granted CVS's motion, finding that Dr. Backman was not qualified to render the opinions at issue and that his opinions in fact amounted to mere "assumptions, speculation[,] and guesswork." Polaino v. Bayer Corp., 122 F. Supp. 2d 63, 69 (D. Mass. 2000). Noting Dr. Backman's testimony that he lacked essentially any personal knowledge of the matters addressed by his expert opinion, lacked any expertise on the standard of care required of pharmacists, and relied nearly wholesale on the Foster Affidavit in opining as to the cause of Carrozza's injuries, the district court found that it was "manifestly clear that Dr. Backman is not qualified to offer an expert opinion" on these issues.

Carrozza appealed both the denial of his motion to conduct an audiovisual deposition of Dr. Foster and the district court's preclusion of Dr. Backman's testimony under Federal Rule of Evidence 702.

## 1. Standard of Review

We review challenges to a district court's discovery determinations under an abuse of discretion standard.  See, e.g., Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 859-60 (1st Cir. 2008).  Under this standard, we "uphold the district court's ruling . . . unless it is 'manifestly erroneous.'"  Schubert v. Nissan Motor Corp. in U.S.A., 148 F.3d 25, 30 (1st Cir. 1998) (quoting Bogosian v. Mercedes-Benz of N. Am., Inc., 104 F.3d 472, 476 (1st Cir. 1997)).  Review of discovery matters in particular is "not appellant-friendly" and intervention on appeal is only appropriate where an appellant has clearly shown that the lower court's order was "plainly wrong and resulted in substantial prejudice."  Modern Cont'l/Obayashi v. Occupational Safety & Health Rev. Comm'n, 196 F.3d 274, 281 (1st Cir. 1999) (quoting Faigin v. Kelly, 184 F.3d 67, 84 (1st Cir. 1999)).

## 2. Carrozza Made No Showing that the District Court Abused its Discretion in Denying His Motion to Depose Dr. Foster

Carrozza alleges that Dr. Backman's disqualifying admissions during deposition testimony in fact "warrant allowing Plaintiff to take an [audiovisual] depo[sition] of Dr. Foster, plaintiff's treating ophthalmologist, for both evidentiary and [summary judgment] Record enlarging use."  Carrozza's argument is that there "was no issue" with his previous expert "up until transcript of his deposition testimony was introduced by CVS with

[summary judgment] moving papers," and thus Carrozza's belated motion to depose Dr. Foster "was for good cause." In particular, Carrozza points to the "short time span" available to remedy Dr. Backman's disqualification.

CVS responds that the district court reasonably exercised its discretion in denying Carrozza's motion to depose Dr. Foster given the factors identified by the court and Carrozza's multiple failed attempts to "backdoor an expert opinion" by means of the Foster Affidavit.

Carrozza has not demonstrated that the district court's denial of his motion was plainly wrong. On the contrary, Carrozza had every opportunity to pursue the inclusion of Dr. Foster as an expert witness. Carrozza's August 2018 motion to admit the Foster Affidavit shows that he was aware as of at least that date that his case would benefit from the inclusion of Dr. Foster's testimony. As noted, the district court explicitly informed Carrozza when denying that motion that to admit Dr. Foster's testimony he must comply with the requirements for designating Dr. Foster as an expert witness under the Federal Rules of Civil Procedure and Evidence. Carrozza chose to ignore these instructions and move to admit the Foster Affidavit a second time without designating Dr. Foster as an expert witness, at which point the district court again informed him of his need to comply with the rules. Not until the end of April 2019, well after the close

- 16 -

of both fact and expert discovery, did Carrozza finally file the contested motion to depose Dr. Foster.

In light of these facts, we conclude that the district court permissibly exercised its discretion in denying Carrozza's motion to depose. It is clear that Carrozza intended to rely on Dr. Foster's findings as early as August 2018, and that he was aware at least upon the denial of that motion that he was required to designate Dr. Foster as an expert witness to do so. Nevertheless, Carrozza made no effort to depose Dr. Foster over the course of the eight months between his first and final motions. Accordingly, we uphold the decision of the district court to deny the motion to depose.

3. Dr. Backman's Expert Testimony was Permissibly Excluded

Carrozza argues on appeal that the district court improperly excluded Dr. Backman's expert testimony given Dr. Backman's relevant experience as a practicing physician. In particular, Carrozza claims that Dr. Backman's professional interactions with pharmacists qualify him to serve as an expert witness on the subject of "custom and usage among" pharmacists, even if his "opinion of rare disease of SJS . . . is properly stricken." Carrozza further asserts that allergists and pharmacists are "sufficient[ly] close in their careers to both know when the other should not give a medication to a patient" and that Dr. Backman's testimony that he did not know the standard of

care for pharmacists is a result of "[Dr.] Backman getting tripped up by [standard of care] questions" and having "not prepared for his deposition by CVS."

CVS responds that Dr. Backman himself "acknowledged that he was unfamiliar with and not qualified to render expert opinions . . . as to the standard of care for pharmacists or pharmacies," despite any experience he might have as an allergist. CVS further notes that "Dr. Backman did not even know the basic facts of the claim presented by Carrozza or CVS's defenses," and in fact lacked any "qualifications to provide reliable testimony about the subject matters at issue in this case." Thus, CVS contends that the district court did not exceed its discretion in precluding Dr. Backman's testimony.

The relevant standard for the admission of expert testimony is Federal Rule of Evidence 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, district courts consider the admissibility of expert testimony by determining whether "an

expert's proffered testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" Samaan v. St. Joseph Hosp., 670 F.3d 21, 31 (1st Cir. 2012) (quoting Daubert v. Merrill Dow Pharms., Inc., 509 U.S. 579, 597 (1993)). The court below correctly identified three factors underlying this determination: (1) whether the proposed expert is qualified by "knowledge, skill, experience, training, or education"; (2) whether the subject matter of the proposed testimony properly concerns "scientific, technical, or other specialized knowledge"; and (3) "whether the testimony [will be] helpful to the trier of fact, i.e., whether it rests on a reliable foundation and is relevant to the facts of the case." Bogosian, 104 F.3d at 476. The Supreme Court has further clarified that the focus of the Rule 702 inquiry "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 595.

The evidence entirely supports the district court's exclusion of Dr. Backman's testimony under Rule 702. Although Dr. Backman's expert opinion was offered to support Carrozza's claims regarding the standard of care for pharmacists and the likely cause of Carrozza's injuries, the expert opinion manifestly failed to meet the standard of admissibility on either of these issues. Dr. Backman testified in his deposition that he could not himself testify as to the appropriate standard of care, the nature of SJS or whether Carrozza displayed that disorder, the cause of any

- 19 -

injuries to Carrozza, or whether Carrozza in fact had any injuries. The district court therefore did not abuse its discretion in finding that "Dr. Backman is not qualified to render the opinions at issue" and his testimony "must be excluded under Rule 702."

Accordingly, we affirm the district court's discovery rulings.

## C. **The District Court's Grant of CVS's Motion for Summary Judgment**

We conclude that summary judgment was appropriately issued for CVS on Carrozza's negligence claim given Carrozza's failure to present any non-precluded expert evidence in support of that claim. Similarly, neither of Carrozza's attempted product liability claims survive a motion for summary judgment, given Carrozza's failure to plead and argue below his failure to warn claim, and given that a pharmacist's dispensing of a prescription drug is primarily a rendition of a service and not a sale of goods under the UCC. Finally, summary judgment was appropriately issued for CVS on Carrozza's Chapter 93A claim given that such claim fails as a matter of law where Carrozza's negligence and product liability claims also fail.

### 1. Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822

- 20 -

(1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  We review de novo a district court's grant of a motion for summary judgment.  See, e.g., Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018).  Under a de novo standard, we affirm the district court's holding if the record, "construed in the light most amiable to [Carrozza], presents no 'genuine issue as to any material fact and reflects [CVS]'s entitlement to judgment as a matter of law.'" Id. (quoting McKenny v. Mangino, 873 F.3d 75, 80 (1st Cir. 2017)); Fed. R. Civ. P. 56(a).  While the burden of demonstrating the appropriateness of summary judgment falls on the moving party, once the movant has "properly supported" its summary judgment motion, the nonmoving party must nevertheless "set forth specific facts showing that there is a genuine issue for trial" and may not simply "rest upon the mere allegations or denials of his pleading." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)); see also Robinson v. Town of Marshfield, 950 F.3d 21, 24 (1st Cir. 2020).

2.   Summary Judgment for CVS was Appropriate on Carrozza's
Negligence Claim

Carrozza argues that the negligence claim against CVS (set forth in Count 1) should survive the motion for summary judgment given that it is properly a question for the jury,

- 21 -

regardless of whether Carrozza can provide expert testimony in his favor. To bolster his claim, Carrozza attempts to identify disputed facts, among them whether Wokoske knew Carrozza had previously been prescribed quinolone antibiotics.

CVS responds that the district court correctly found that the negligence claim required an expert opinion as to at least the applicable standard of care and the causation of Carrozza's injuries, and – lacking such expert opinion – therefore properly entered summary judgment for CVS. CVS characterizes the question of Wokoske's breach of duty as the "central element" of Carrozza's negligence claim and argues that the nature of the duty owed to patients by pharmacists "undoubtedly requires the presentation of expert testimony."

The Supreme Judicial Court "has long recognized that pharmacies have a duty to fill prescriptions correctly." Correa v. Schoeck, 98 N.E.3d 191, 199 (Mass. 2018) (citing Cottam v. CVS Pharmacy, 764 N.E.2d 814, 819 (Mass. 2002)). A successful negligence claim requires the plaintiff to prove that "the defendant owed the plaintiff a duty of reasonable care, that the defendant breached this duty, that damage resulted, and that there was a causal relation between the breach of the duty and the damage." Id. at 198 (quoting Jupin v. Kask, 849 N.E.2d 829, 834-35 (Mass. 2006)); see Nutt v. Florio, 914 N.E.2d 963, 966 (Mass. App. Ct. 2009) (first citing Glidden v. Maglio, 722 N.E.2d 971,

973 (Mass. 2000); then citing Lieberman v. Powers, 873 N.E.2d 803, 807 (Mass. App. Ct. 2007); and then citing Restatement (Second) of Torts § 281 (Am. L. Inst. 1965)); see also Curreri v. Isihara, 952 N.E.2d 393, 395 (Mass. App. Ct. 2011) ("In a medical malpractice case, the burden is on the plaintiff to establish a causal connection between the alleged negligence of a defendant and any damages."). We have previously held that in cases where expert testimony is required under state law, the absence of such testimony mandates issuance of summary judgment against the party that failed to provide expert evidence. Flanders & Medeiros, Inc. v. Bogosian, 65 F.3d 198, 206 (1st Cir. 1995). Massachusetts courts have held that in negligence and malpractice actions, "[e]xpert testimony is generally needed to establish [the] professional standard of care" that "can be reasonably expected from similarly situated professionals." See LeBlanc v. Logan Hilton Joint Venture, 974 N.E.2d 34, 44 (Mass. 2012) (quoting Klein v. Catalano, 437 N.E.2d 514, 525 (Mass. 1982)) (first citing Pongonis v. Saab, 486 N.E.2d 28, 29 (Mass. 1985) (legal malpractice); then citing Collins v. Baron, 467 N.E.2d 171, 173-74 (Mass. 1984) (medical malpractice); and then citing Atlas Tack Corp. v. Donabed, 712 N.E.2d 617, 621-22 (Mass. App. Ct. 1999) (legal malpractice in failing to present expert testimony of engineer)). See generally Massachusetts Guide to Evidence 165-173 (2021) (setting forth and discussing Section 702, Testimony by

Expert Witnesses, and Section 703, Bases of Opinion Testimony by Expert).

We conclude that an expert opinion is similarly necessary here to prove the appropriate standard of care for Wokoske. As the district court correctly noted, there is no Massachusetts case law expressly pertaining to the use of expert testimony regarding the professional judgment of pharmacists. Nevertheless, the appropriate standard of care with respect to a pharmacist's dispensation of prescriptions is, as in other professional judgment cases, "not normally within the experience of lay persons." Frullo v. Landenberger, 814 N.E.2d 1105, 1110 (Mass. App. Ct. 2004). Rather, "without expert testimony laymen, including the jury, the trial judge, and [the appellate court], could not be, and are not, in a position to determine" the appropriate standard of care. Haggerty v. McCarthy, 181 N.E.2d 562, 566 (Mass. 1962). We agree with the district court that the "central issue underlying the negligence claim" is whether Wokoske breached his duty to Carrozza by dispensing Levaquin despite a hard stop warning, and similarly determine that this issue is beyond the ken of a lay jury. Thus, expert testimony is required on the issue of standard of care.

Nor does this case present an issue of common-sense determination sufficient to preclude the need for an expert, as plaintiff argues. See Gliottone v. Ford Motor Co., 130 N.E.3d

212, 216 (Mass. App. Ct. 2019) (finding that expert testimony is necessary "on subjects that the trier of fact would not 'be expected to understand in many circumstances without guidance from an expert'" but not where "lay knowledge enables the jury to find the relevant facts" (quoting Providence & Worcester R.R. v. Chevron U.S.A. Inc., 622 N.E.2d 262, 264 (Mass. 1993)) (citing Smith v. Ariens Co., 377 N.E.2d 954, 957 (Mass. 1978))). A pharmacist exercising his professional judgment in the context of Mass. Gen. Laws ch. 112's extensive regulatory scheme is not comparable to a physician unintentionally leaving a foreign object inside a patient during an operation, Haggerty, 181 N.E.2d at 565, or a lawyer preparing a demand for an amount a hundred times less than the actual amount requested by his client, Varnum v. Martin, 32 Mass. 440, 440 (1834). Wokoske's alleged negligence is not "so gross or obvious" that laymen can infer it from the facts alone, and thus an expert opinion as to the standard of care for pharmacists is essential to the success of Carrozza's claim. Pongonis, 486 N.E.2d at 29.

By not adducing any admissible expert testimony, Carrozza thus fails to substantiate his negligence claim sufficiently to constitute a dispute of material fact. As discussed above, the properly excluded opinion of Dr. Backman was Carrozza's only expert evidence. Without expert evidence as to the standard of care, Carrozza has failed to demonstrate a dispute

- 25 -

of material fact regarding CVS's alleged breach of duty.  Given that there is therefore no dispute of material fact on Carrozza's negligence claim, the district court correctly entered judgment for CVS.

3.   Summary Judgment for CVS was Appropriate on Carrozza's Product Liability Claim

We examine both of Carrozza's attempted product liability claims (set forth in Count 3): the failure to warn claim with respect to Wokoske's alleged duty to inform Carrozza of the risks of Levaquin, and the breach of implied warranty claim with respect to Levaquin's defective nature.

i. *The Failure to Warn Claim*

On appeal, Carrozza attempts to re-assert his untimely allegation that "CVS knew [that the Levaquin] was defective, or at least had evidence that [the] product was defective for Mr. Carrozza and failed to warn."  Carrozza admits that this claim was not asserted in the pleadings.  As the district court correctly noted, a litigant may not posit a theory for the first time in opposition to a summary judgment motion.  Brooks v. AIG SunAmerica Life Assurance Co., 480 F.3d 579, 589 (1st Cir. 2007).  Similarly, "[a]ppellants cannot raise an argument on appeal that was not 'squarely and timely raised in the trial court.'"  Thomas v. Rhode Island, 542 F.3d 944, 949 (1st Cir. 2008) (quoting Iverson v. City of Boston, 452 F.3d 94, 102 (1st Cir. 2006)).  Accordingly, we

affirm the district court's rejection of Carrozza's failure to warn claim and decline to address it further on appeal.[6]

ii. *The Breach of Implied Warranty Claim*

As the district court observed in its memorandum, "Carrozza's product liability argument is so thinly briefed and difficult to comprehend that there is a strong argument for waiver." 391 F. Supp. 3d at 147 (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)); see also Kelly, 964 F.3d at 115 n.8. The same could be said here. We do note that in his amended complaint, it appears that Carrozza alleged a strict liability theory of recovery. He first cites Everett v. Bucky Warren, Inc., 380 N.E.2d 653 (Mass. 1978), for the principle that a defendant "is liable for the distribution of an unreasonable dangerous product to Plaintiff." He next alleges that CVS "is liable to Plaintiff for damages suffered as a result of warranty breach or defective product." He then cites Back v. Wickes Corp., 378 N.E.2d

_____

[6] Nor is it clear that Cottam, 764 N.E.2d at 821–23, would sustain Carrozza's failure to warn claim, had such claim been properly raised. Cottam addressed the limited circumstances in which a pharmacy's voluntary assumption of the duty to warn patients of potential side effects required such warning to extend to all possible side effects. Id. In contrast, Carrozza's claims stem from CVS's internal warning system, targeted to pharmacists. Whether an internal warning system relying on the technical performance of an individual pharmacist is properly analogized to a consumer-facing warning form provided by the pharmacy can be debated. Regardless, this argument is insufficiently developed by Carrozza, and is therefore waived. Kelly v. Riverside Partners, LLC, 964 F.3d 107, 115 n.8 (1st Cir. 2020).

964 (Mass. 1978), for the proposition that the Levaquin "was unfit and unreasonably dangerous to sell or induce consumption by Plaintiff."

"In Massachusetts, 'there is no strict liability in tort apart from liability for breach of warranty under the Uniform Commercial Code, G.L. c. 106, §§ 2-314-2-318.'" Guzman v. MRM/Elgin, 567 N.E.2d 929, 932 (Mass. 1991) (quoting Swartz v. Gen. Motors Corp., 378 N.E.2d 61, 62 (Mass. 1978)). The Supreme Judicial Court has specifically stated that it is unwilling to hold "that, apart from liability for breach of warranty under our statute, there may be liability without fault for defective products." Mason v. General Motors Corp., 490 N.E.2d 437, 442 (Mass. 1986). Consequently, there is no independent claim of "strict liability in tort" under Massachusetts law, and the sole remedy for strict liability is provided under the UCC. Thus, we construe Carrozza's strict product liability claim to be a breach of implied warranty claim under the UCC – as did the district court – and address the merits of his claim that summary judgment was improperly granted to CVS.

It is undisputed that CVS sold the Levaquin to Carrozza. It is also clear under Massachusetts law that Carrozza's claim for breach of implied warranty can only survive if it arises from a contract for the sale of goods. The UCC applies to contracts for transactions in goods, and not to agreements for the provision of

- 28 -

services.  White v. Peabody Constr. Co., 434 N.E.2d 1015, 1021-22 (Mass. 1982).  Pharmacists, however, do not simply sell medications; they also provide professional health care services. Where, as here, there is a mix of elements in a transaction, under Massachusetts law, to determine whether dispensation of a prescription by a pharmacist constitutes a transaction in goods, we must consider "whether the predominant factor, thrust, or purpose of the contract is (1) 'the rendition of service, with goods incidentally involved, or is [instead (2)] a transaction of sale, with labor incidentally involved.'"  Cumberland Farms, Inc. v. Drehmann Paving & Flooring Co., 520 N.E.2d 1321, 1324 (Mass. App. Ct. 1988) (alteration in original) (quoting Bonebrake v. Cox, 499 F.2d 951, 960 (8th Cir. 1974)) (citing White, 434 N.E.2d at 1021)).

We hold, in agreement with CVS and the district court, that under Massachusetts law a pharmacist's dispensation of prescribed medication is predominately the provision of services, and not the sale of goods.  Although this specific question is an issue of first impression for the Massachusetts appellate courts, we note that a court in the District of Massachusetts has previously found that dispensation of a prescribed methylprednisolone acetate injection constitutes a service under the UCC.  In re New Eng. Compounding Pharmacy, Inc. Prods. Liab. Litig., MDL No. 13-02149-RWZ, 2015 WL 178130, at *5 (D. Mass. Jan.

- 29 -

13, 2015) (applying the UCC in assessing strict liability under Illinois law).  In addition, other courts have consistently concluded that pharmacists primarily provide a service when dispensing prescriptions.  See In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272, 292 (S.D.N.Y. 2001); Madison v. Am. Home Prods. Corp., 595 S.E.2d 493, 495-96 (S.C. 2004); Herzog v. Arthrocare Corp., No. Civ. 02-76-P-C, 2003 WL 1785795, at *13 (D. Me. Mar. 21, 2003); see also Whiting v. Rite Aid Corp., 28 F. Supp. 3d 1192, 1196-97 (D. Utah 2014) (drawing a distinction between the role a pharmacist performs when dispensing a prescription drug and other roles a pharmacist may perform outside the prescription drug setting).  This reasoning is further substantiated by the Massachusetts Board of Registration in Pharmacy's definition of "dispensing" as:

> [T]he physical act of delivering a drug, chemical, device or combination thereof to an ultimate user pursuant to the lawful order of a practitioner, as defined in M.G.L. c. 94C, § 1, including the utilization of the professional judgment of the pharmacist and the packaging, labeling, or compounding necessary to prepare the drug, chemical, or device for delivery.

247 Mass. Code. Regs. 2.00 (2013) (emphasis added).

We find instructive (as quoted by the district court, 391 F. Supp. 3d at 148) the analysis of the pharmacist's role described by the California Supreme Court:

> It is pure hyperbole to suggest . . . that the role of the pharmacist is similar to that of a clerk in an ordinary retail store.  With a few exceptions, only a

- 30 -

> licensed pharmacist may dispense prescription drugs, and
> . . . there are stringent educational and professional
> requirements for obtaining and retaining a
> license . . . . A key factor is that the pharmacist who
> fills a prescription is in a different position from the
> ordinary retailer because he cannot offer a prescription
> for sale except by order of the doctor. In this respect,
> he is providing a service to the doctor and acting as an
> extension of the doctor in the same sense as a technician
> who takes an X-ray or analyzes a blood sample on a
> doctor's order.

Murphy v. E.R. Squibb & Sons, Inc., 710 P.2d 247, 251 (Cal. 1985).

The provision of services is clearly not incidental to a pharmacist's dispensation of prescribed medication under Massachusetts law, but rather predominates over the transaction in goods.

Thus, insofar as Carrozza intends to allege strict liability stemming from a claim of breach of implied warranty, his claim cannot survive a motion for summary judgment. We affirm the district court's issuance of summary judgment for CVS on the product liability claims.

4.    Summary Judgment for CVS was Appropriate on Carrozza's
               Chapter 93A Claim

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). It is well established that to allege a violation of Chapter 93A a plaintiff must show that the disputed conduct falls within a "common-law, statutory, or other established concept of unfairness." Serpa

Corp. v. McWane, Inc., 199 F.3d 6, 15 (1st Cir. 1999) (quoting Linkage Corp. v. Trs. of Bos. Univ., 679 N.E.2d 191, 209 (Mass. 1997)). Given that Carrozza alleges no common-law, statutory, or otherwise-established unfairness on the part of CVS that is sufficient to survive a motion for summary judgment, his Chapter 93A claim (set forth in Count 2) fails as a matter of law. Kearney v. Philip Morris, Inc., 916 F. Supp. 61, 65 (D. Mass. 1996) ("If plaintiff's claims of breach of warranty and negligence fail, plaintiff's Mass. Gen. L. ch. 93A claim also fails.").

### III. <u>CONCLUSION</u>

For the foregoing reasons, the district court's denial of Carrozza's motions to remand and to conduct an audiovisual deposition of Dr. Foster, grant of CVS's preclusion motion, and issuance of summary judgment for CVS on all counts are

**<u>Affirmed</u>**.